UNITED STATES of America, Plaintiff-Appellee,

v.

Ali Asghar TAHERI, Defendant-Appellant.

No. 79–1711.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1981.

Decided June 1, 1981.

Kenneth McMullan, San Diego, Cal., for defendant-appellant.

Hector E. Salitrero, Asst. U. S. Atty., argued, M. James Lorenz, U. S. Atty., Hector E. Salitrero, Asst. U. S. Atty., on the brief, San Diego, for plaintiff-appellee.

Before TRASK, SNEED and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an appeal from a conviction on three counts of charges related to drug possession.[1] The case was tried to the Court on stipulated facts. Two issues are presented for review. The first is the admissibility of evidence of heroin seized pursuant to a warrant, but originally discovered in an initial search which had been conducted without a warrant and without probable cause. The second issue is whether, assuming the heroin was inadmissible, the defendant's post-arrest consent to other searches, which yielded opium, was sufficient to purge the primary taint. We reverse all of the convictions.

On May 30, 1979, an informant of unknown reliability supplied a DEA agent with the description of a person who was allegedly selling heroin from a certain motel. The agent verified with the motel clerk that a man who matched the informant's description, appellant Ali Taheri, had been staying at the motel but had hurriedly checked out. A few days later, the motel clerk advised the agent that Taheri had returned to the motel and had stated that a package was to arrive for him in the near future. That afternoon the clerk called again and reported that a package had arrived.

An agent went to the motel and examined the package, which had suffered during handling in the mail and was held together by a rubberband. While the agent was handling the box, the top opened and the agent observed numerous folded paper bindles inside. He then removed the rubberband and took out one of the bindles, causing some brown powder to fall out. The agent took the powder to the DEA office for testing, and it was determined to be heroin. The government does not seriously dispute the illegality of that search of the package and seizure of the sample.

At that point, the agent reported the situation to an assistant U.S. Attorney. On

---

1. The defendant was found guilty on one count of conspiracy to possess a controlled substance in violation of 21 U.S.C. § 846 and two counts of possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

the advice of the assistant U.S. Attorney, agents took a Customs detector dog to the motel. The dog "alerted" on the package, indicating the presence of drugs. The fact of the dog's alert, without mention of the earlier search of the package, was provided to a U.S. magistrate, who issued a search warrant. The agents then, armed with the warrant, returned to the motel, seized 58 of the bindles and substituted bindles of powder for the heroin. One heroin bindle was also left in the package.

The following evening, after Taheri returned to the motel and claimed the package, he was arrested with the contents of the package in his possession. After his arrest, he was advised of his rights and gave written consent to searches of his vehicle and his room in another hotel. Opium was found in both places.

## ADMISSIBILITY OF THE HEROIN

The first issue to be decided on appeal is whether the heroin should have been suppressed because it was discovered by means of an unlawful search of the package followed by the equally unlawful seizure and testing of one of the bindles. The government argues that the subsequent "alert" by the dog, which formed the basis for the search warrant and which preceded the seizure of the remaining bindles, was an "independent source" which purged the taint of the initial unlawful activity. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Thus the government's position is that the taint of an unlawful discovery of evidence is purged by a "rediscovery" by means acceptable for obtaining a warrant.[2]

The test as laid down by this Court, however, is whether "anything seized illegally, or any leads gained from that illegal activity, tend significantly to direct the investigation toward the specific evidence sought to be suppressed." *United States v. Cales*, 493 F.2d 1215, 1216 (9th Cir. 1974). In this case, the illegally gained knowledge that the substance in the package was heroin formed the impetus for the use of the detector dog. The dog's alert therefore cannot be considered an independent source which removed the taint of the original illegal search. The initial search was part of the same criminal investigation leading to this prosecution and revealed the same evidence which was the subject of the motion to suppress. See the discussion in *United States v. Bacall*, 443 F.2d 1050 (9th Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 565, 30 L.Ed.2d 557 (1971), in which a later investigation uncovered separate evidence of a different crime.

The government's position cannot be reconciled with the policy behind the exclusionary rule: the effective deterrence of unlawful searches and seizures. *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 413, 86 S.Ct. 459, 463, 15 L.Ed.2d 453 (1966); *Linkletter v. Walker*, 381 U.S. 618, 636, 85 S.Ct. 1731, 1741, 14 L.Ed.2d 601 (1965). The subsequent use of the dog and the securing of the warrant amounted to no more than a post hoc justification for using information that had already been illegally obtained. To permit evidence to be admitted under these circumstances would encourage police officers to ignore the dictates of the fourth amendment in conducting initial investigations. As this Court has recently stated:

> Mechanical application of the traditional *Wong Sun* "independent source" analysis where a search warrant is subsequently commissioned albeit supported by an affidavit that relies upon independent evidence, would allow police officers to treat the warrant requirement as merely an ex post facto formality. *See United States v. Griffin*, 502 F.2d 959 (6th Cir. 1974), *cert. denied*, 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974) (per curiam) . . . .

*United States v. Allard*, 634 F.2d 1182, 1185 n.3 (9th Cir. 1980).

This is not a case challenging the sufficiency of a warrant on the ground that the supporting affidavit, in addition to containing legal evidence sufficient to establish

---

2. We assume without deciding that use of the dog under these circumstances did not require a warrant. *See United States v. Solis*, 536 F.2d 880 (9th Cir. 1976).

probable cause, also referred to illegal evidence. *See, e. g., United States v. DiMuro,* 540 F.2d 503, 515 (1st Cir. 1976), *cert. denied sub nom. Hurley v. United States,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977); *Howell v. Cupp,* 427 F.2d 36, 38 (9th Cir. 1970). Nor is this a case in which the police had legally obtained probable cause before engaging in an illegal, confirmatory search. *Krauss v. Superior Court of San Joaquin County,* 5 Cal.3d 418, 422–23, 487 P.2d 1023, 1027, 96 Cal.Rptr. 455, 458 (1971).[3] In this case the agents had no probable cause before the illegal search, and the efforts to obtain a warrant were merely attempts to validate information unlawfully gained. The evidence of the heroin was not admissible.

### SEIZURE OF THE OPIUM

■ The second issue is whether the appellant's post-arrest consent to search is sufficient to avoid exclusion of the opium. The only basis for the appellant's arrest was the illegally seized evidence. As a result, the arrest is also illegal since it was not supported by any independent factual basis providing probable cause at the time it was made. *See United States v. Marchand,* 564 F.2d 983, 991 (2d Cir. 1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978); W. LaFave, 3 *Search and Seizure* § 11.4(e) (1978). Shortly after the appellant was illegally arrested, confronted with the illegally seized evidence, and advised of his *Miranda* rights, he executed a written consent to search both his car and hotel room where the opium was discovered.

■ The government seeks to justify admission of the opium evidence because of the appellant's consent. Even assuming that the consent was voluntary, however, *see Dunaway v. New York,* 442 U.S. 200, 216, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979), the evidence found as a result of that consent must nonetheless be suppressed if the unconstitutional conduct was not sufficiently attenuated from the subsequent seizure to avoid exclusion of the evidence. *Brown v. Illinois,* 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975); *Dunaway v. New York,* 442 U.S. at 216, 99 S.Ct. at 2258; *United States v. Perez-Esparza,* 609 F.2d 1284, 1288 (9th Cir. 1979). *See also United States v. Perez-Castro,* 606 F.2d 251 (9th Cir. 1979) (inculpatory statements on morning following illegal arrest not sufficiently attenuated). In this case there was no sufficient attenuation. The government, which bears the burden of showing admissibility in these circumstances, *United States v. Perez-Esparza,* 609 F.2d at 1289, points to no intervening events or lapse of time which would show Taheri's consent was "sufficiently an act of free will to purge the primary taint of the unlawful invasion." *Id., quoting Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 416–17, 9 L.Ed.2d 441 (1963). *See also United States v. Jones,* 608 F.2d 386, 392 (9th Cir. 1979). The opium was also inadmissible.

---

**3.** The California Supreme Court has recently re-evaluated the problems inherent in the *Krauss* position that there is no exploitation of a police illegality within the meaning of *Wong Sun* when a police officer possesses lawfully acquired information sufficient to support the issuance of a search warrant, but conducts an illegal search before actually seeking the warrant. In *People v. Cook,* 22 Cal.3d 67, 98–99, 583 P.2d 130, 148–49, 148 Cal.Rptr. 605, 623–24 (1978), the court, noting that the ensuing illegal search would increase the risk of invading innocent privacy and was therefore constitutionally unreasonable, stated:

> After *Krauss,* a police officer need not rely solely on lawfully obtained probable cause; he can instead achieve "certain cause" by conducting an unlawful confirmatory search, thus saving himself the time and trouble of

> obtaining and executing a warrant if he does not find the evidence. He can safely engage in this conduct because *Krauss* teaches him that if the evidence does turn up in the course of the illegal search, he will still be allowed to seize it later in a second "search" under color of a warrant. The latter prospect thus gives him strong incentive to proceed with the warrantless entry. Yet every time he fails to find the suspected evidence, he has also invaded the privacy of a citizen innocent of any wrongdoing. The second "search" is therefore constitutionally unreasonable because it significantly contributes to increasing the risk of such invasions of privacy.

*Krauss* was therefore overruled insofar as it held to the contrary.

The convictions are reversed and the mandate shall issue forthwith.