803 P.2d 113

**STATE of Arizona, Appellee,**

v.

**Christopher Reed KEMPTON, Appellant.**

**No. 1 CA–CR 89–494.**

Court of Appeals of Arizona, Division 1, Department A.

July 19, 1990.

Reconsideration Denied Aug. 30, 1990.

Review Denied Jan. 23, 1991.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser, Chief Counsel, Crim. Div., and Mark E. Dwyer, Asst. Atty. Gen., Phoenix, and David S. Ellsworth, Yuma Co. Atty. by Philip Hall, Chief Deputy Co. Atty., Yuma, for appellee.

Suciu, Donovan & Schmitt by Michael J. Donovan, Yuma, for appellant.

## OPINION

CLABORNE, Presiding Judge.

The defendant was arrested and charged with possession of cocaine, marijuana and drug paraphernalia. Before trial, he moved to suppress evidence seized during the search of his vehicle, and to exclude statements he made to the police officers during and following the search. The trial court denied the motion after an evidentiary hearing. The evidence and statements were subsequently admitted during his trial. The jury found the defendant guilty of possession of cocaine and drug paraphernalia.[1] The court placed the defendant on supervised probation for three years. The defendant timely appealed. In his appeal, the defendant challenges the legality of the police action in stopping and searching his truck. Because we find that the police were not justified in stopping the defendant and searching his truck without first obtaining a warrant, we reverse and remand for further proceedings.

## FACTS

The following events occurred in the small community of Somerton, Arizona, which is a few miles south of Yuma, Arizona. On December 15, 1988, at approximately 12:30 a.m., Agent Daniel Nordell, a member of a drug enforcement task force called Southwest Border Alliance, received information from a "confidential reliable informant." The informant told Agent Nordell that the defendant had offered to sell the informant cocaine during the day of December 14, 1988. The informant stated that he had seen the cocaine in defendant's 1985 white Toyota truck. The infor-

---

1. The court dismissed the charge of possession of marijuana due to insufficient quantity.

mant also told Agent Nordell that the defendant would have the cocaine in his truck when he went to work the following morning. Although the informant did not refer to any specific amount, it was clear to Agent Nordell that it was a small amount of cocaine.

Agent Nordell relayed all of this information to Agent Juan Hoke, another member of the task force, immediately after the informant's phone call. At that time, Agents Nordell and Hoke discussed the need for a search warrant, but they decided not to get one. Agent Nordell testified about their conversation:

Q. Dan, you and Hoke talked about whether or not a search warrant would be required in this case when you talked to him? Right?

A. We discussed the idea of a search warrant briefly.

Q. And the decision was made that you were not going to get a search warrant between you and Hoke? Right?

A. Right.

Q. And that conversation was when you spoke with Hoke the night before between the hours of twelve and one?

A. Again, I am not real sure about the times, right now, but it was during the only discussion we had prior to the stop of Mr. Kempton.

. . . . .

Q. Now, concerning your discussion with Hoke about the search warrant, in this case you are not processing—at least were at that time feeling that you were dealing with a relatively small amount of narcotics, someone who was referred to as a relatively small dealer, and you felt you had enough probable cause and decided to just stop and check his vehicle? Right?

A. Basically.

Q. And you discussed with me the thought processes behind that on the twenty eighth of February? Right?

A. Yes, sir.

Q. And you told me that, when you get a report that here is a vehicle out running around, that one of your reliable informants has seen some narcotics in, and you haven't been able to get a registration check to the vehicle, if we find that vehicle, we will stop it, and the person will be asked if he will let you take a look, and you said it's always nicer to get a consent search than to have to do it the hard way? We always ask them if they mind if we search? Did that about cover it?

A. It was in response of [sic] your statement about Mr. Kempton giving a consent of the vehicle, yes.

Q. But you were giving a general view of how you handled it there? Right?

A. I was responding that we always ask for a search of the vehicle.

Agent Hoke testified that between 12:30 a.m. and approximately 7:00 a.m., there were three magistrates available in the area to issue a search warrant and that a warrant could have been obtained in an hour or less. When Agent Hoke was asked if he had thought about getting a search warrant after the search had occurred, he responded, "No. I had no—I did not think of getting a search warrant prior nor after."

At 7:00 a.m. on December 15, Agent Hoke watched the defendant leave his residence for work in the white Toyota truck described by the informant. Agent Hoke was acquainted with the defendant and was familiar with the truck. He contacted Officer White of the Somerton Police Department and asked Officer White to stop the defendant's truck and "make it look like a traffic stop." Based on Agent Hoke's instruction, Officer White turned on his overhead emergency lights and followed the normal police procedure for stopping a vehicle. Officer White testified that the defendant had not committed a traffic violation,[2] and that the defendant was not under the influence of drugs or alcohol at the time of the stop. The traffic

**2.** The facts in this record do not support an argument under the rationale of pretextual searches. *See United States v. Guzman,* 864 F.2d 1512, 1515 (10th Cir.1988). There was no pretext of any kind by White when he stopped Kempton's vehicle.

stop was made *solely* on the orders of Agent Hoke who had told Officer White that he, Hoke, had probable cause to believe that the defendant had drugs in the truck.

Officer White asked the defendant to step out of the truck. When the defendant asked Officer White why he was being stopped, Officer White responded that Agent Hoke wanted to speak to him regarding possession of illegal drugs. Agent Hoke immediately arrived and advised the defendant that he had probable cause to believe that the defendant was in possession of illegal drugs.

Agent Hoke asked the defendant if he would mind emptying his pockets. The defendant did so, but no narcotics were found. Agent Hoke then asked for permission to look in the defendant's vehicle. The defendant replied, "Go ahead. You are not going to find nothing."

Upon inspecting the truck, Agent Hoke found four burnt marijuana cigarettes in the ashtray. The defendant was placed under arrest and advised of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant stated that he understood his rights and did not mind answering questions. Agent Hoke asked the defendant about the marijuana cigarettes, and he admitted that they were his.

Agent Hoke then went back into the truck, searched, and found a small vial containing a powder-like substance which he suspected was cocaine. The defendant stated that he knew what was in the vial, but denied knowing how it got in his truck.

After the arrest, the defendant was taken to the Somerton Police Department. He was not handcuffed. He was allowed to smoke and to make as many phone calls as he wanted. During this period, an officer assigned to watch the defendant asked him if he knew what was in the vial. The defendant responded that he knew the vial

contained cocaine because he had tasted it, that the cocaine was not his, and that he did know that it was in the truck.

During the search of the defendant's truck at the police station, the officers found a small straw with white residue along with a straight razor blade. The defendant later signed a statement admitting that the marijuana cigarettes were his and that the cocaine had been left in his truck.

## DISCUSSION

The defendant contends that the stop and search of his vehicle were illegal and that the evidence discovered as a result of that search should have been suppressed. He argues further that the statements made after the search should have been suppressed because they were the "fruits" of the illegal stop and search of the defendant's vehicle.

The state's position is that since the agents had a reasonable suspicion that the defendant's vehicle contained narcotics, they could stop the vehicle to inquire whether the driver would consent to a search of the car.

We must answer two questions. First, were the defendant's fourth amendment rights violated when the agents, who had approximately six and one-half hours to obtain a warrant, made a warrantless stop of the defendant's truck based solely on reliable information from an informant that the defendant's truck contained illegal contraband? And second, if such a stop was a fourth amendment violation, was a subsequent "consent search" of the defendant's person and truck valid?

## THE WARRANTLESS STOP

 The starting point of this inquiry is the fourth amendment to the federal constitution.[3] The basic constitutional rule is that a search or seizure is *per se* unreasonable unless it is supported by a warrant

---

3. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const. Amend. IV.

or falls within one of the few specifically established and well-delineated exceptions to the constitutional warrant requirement. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). *See also Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971); *State v. Sardo*, 112 Ariz. 509, 513, 543 P.2d 1138, 1142 (1975). These exceptions must be narrowly tailored to the circumstances that justify their creation. *Florida v. Royer*, 460 U.S. 491, 499–500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983); *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); *Terry v. Ohio*, 392 U.S. 1, 19, 25–26, 88 S.Ct. 1868, 1878–79, 1882, 20 L.Ed.2d 889 (1968). If special circumstances exist, the resulting search or seizure must occur only at the time in which those circumstances are present, and must be as short in duration as possible. *See Coolidge*, 403 U.S. at 458–64, 91 S.Ct. at 2033–37; *Royer*, 460 U.S. at 500, 103 S.Ct. at 1325. *See also Terry*, 392 U.S. at 25–26, 88 S.Ct. at 1882–1883.

■ One of the exceptions to the warrant requirement is based, in part, upon the impracticability of obtaining a warrant to search an automobile. *Carroll v. United States*, 267 U.S. 132, 159–60, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925). In *Carroll*, the Court recognized that, because of the nature of an automobile in transit, an immediate intrusion may be necessary if police officers are to secure the illicit substance.

*United States v. Ross*, 456 U.S. 798, 806–07, 102 S.Ct. 2157, 2163, 72 L.Ed.2d 572 (1982) (citing *Carroll*, 267 U.S. at 153, 45 S.Ct. at 285).[4] The Court held that a warrantless search of an automobile is legal if probable cause exists to believe "that an automobile or other vehicle contains that which by law is subject to seizure and destruction." *Carroll*, 267 U.S. at 149, 45 S.Ct. at 284. *See also State v. Axley*, 132 Ariz. 383, 390–91, 646 P.2d 268, 275–76 (1982).

■ The reason for carefully-crafted exceptions to the warrant requirement is found in the purpose of the fourth amendment.[5] Prior review by a detached and neutral magistrate before the issuance of a search warrant limits the power held by executive officers over the individual citizen and prevents unjustified searches from occurring at all. *United States v. United States Dist. Court*, 407 U.S. 297, 317, 92 S.Ct. 2125, 2136–37, 32 L.Ed.2d 752 (1972). Furthermore, it helps "prevent hindsight from coloring the evaluation of the reasonableness of a search or seizure." *United States v. Martinez–Fuerte*, 428 U.S. 543, 565, 96 S.Ct. 3074, 3086, 49 L.Ed.2d 1116 (1976). We must keep firmly in place the principle that police whenever practicable must obtain advance judicial approval of searches and seizures through the warrant process. *See, e.g., Katz*, 389 U.S. at 356–57, 88 S.Ct. at 514; *Chapman v. United States*, 365 U.S. 610, 613–17, 81 S.Ct. 776, 778–80, 5 L.Ed.2d 828 (1961).

■ The exigencies which create the automobile exception are the lack of time

**4.** Although mobility of the automobile, as reflected in *Carroll,* was the original reason for the exception, later cases dealing with other aspects of warrantless searches have observed that the expectation of privacy is less in automobiles than in a home or office. *California v. Carney,* 471 U.S. 386, 393–94, 105 S.Ct. 2066, 2070–71, 85 L.Ed.2d 406 (1985); *South Dakota v. Opperman,* 428 U.S. 364, 367–69, 96 S.Ct. 3092, 3096–97, 49 L.Ed.2d 1000 (1976). *See also United States v. Chadwick,* 433 U.S. 1, 12–13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977). The facts here do not require us to examine the application of this reasoning.

**5.** Justice Jackson, writing for the Court in *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948), stated:

The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers....

to get a warrant and the mobility of the vehicle. *Coolidge,* 403 U.S. at 459–65, 91 S.Ct. at 2034–37. *See also Axley,* 132 Ariz. at 391, 646 P.2d at 276. Those exigencies were not present in this case. The officers had six and one-half hours to obtain a warrant without any apparent fear that the truck would flee the jurisdiction. They knew the defendant, where he lived, the vehicle that he drove, and the place where he worked. The information provided to the officers suggested, in fact, that the defendant would remain in Somerton. There was no reason to stop the defendant except to ask for his consent to search his truck on the grounds that the agents believed that they had probable cause that the defendant possessed illegal drugs. Any one of three magistrates could have issued a warrant in less than an hour if there was probable cause to support such a warrant.[6] The only reasons the agents gave for not obtaining a warrant were that the amount of cocaine was small, that the defendant was not a major dealer, and that "it's always nicer to get a consent search than to have to do it the hard way." The ease and importance of obtaining a search warrant undercuts the justification for warrantless searches based on exigent circumstances.[7]

The record reflects that stopping a vehicle and asking for consent to search was not an unusual procedure for these agents. If the request for permission to search was denied, then the police would determine if it was practical to get a warrant.

The general rule requires a warrant *before* a search or seizure can occur unless one of the narrow exceptions to the warrant requirement applies. Police may conduct a warrantless search and seizure of a vehicle when they are confronted by emergencies and exigencies which do not allow time to allow a judicial officer to evaluate and act upon applications for a warrant supported by probable cause. *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970). *See also Axley,* 132 Ariz. at 391, 646 P.2d at 276 (1982).

Because Agent Hoke and Officer White had ample time to obtain a warrant, we find that they were not justified in stopping and searching the defendant without first obtaining a warrant.

### CONSENT TO SEARCH

The position of the state, however, goes further. Even if the stop was not legal, says the state, the consent to search given by the defendant was voluntary and no arrest occurred until contraband was discovered as a result of the voluntary consensual search. Therefore, the evidence was admissible. This is not the law as applied to these facts.

Immediately after the defendant was stopped by Officer White and told to get out of his vehicle, Agent Hoke arrived on the scene. He told the defendant that he had probable cause to believe that the defendant was in possession of illegal drugs, and asked the defendant if he could look in his truck. The defendant had no objection.

---

**6.** "In lieu of a written affidavit, the magistrate may take an oral statement under oath which shall be recorded on tape.... The statement may be given in person to the magistrate, or by telephone, radio, or other means of electronic communication. This statement shall be deemed to be an affidavit for the purposes of the issuance of a search warrant." A.R.S. § 13–3914(C). *See State v. Hadd,* 127 Ariz. 270, 619 P.2d 1047 (1980).

**7.** The following comment is important when discussing the degree of exigency of the circumstances that compel warrantless conduct:

The availability of a search warrant via telephone or other electronic means obviates much of the claimed exigency justification for a warrantless search for objects.... Administrative obstacles heretofore cited for not se-

curing a search warrant by appearing before a magistrate must now be examined in a different light. Such factors as the distance from a magistrate, the time required to appear before a magistrate, the normal business hours of a magistrate, the inconvenience of securing and dispatching additional agents to appear before a magistrate are now less determinative in justifying the exception. A magistrate, and a search warrant, can be as close as the nearest telephone or mobile radio. The mobility, and thus the risk of loss, of the object to be searched and property to be seized is reduced in importance.

Marke, *Telephonic Search Warrants: A New Equation for Exigent Circumstances,* 27 Clev.St. L.Rev. 35, 38 (1978).

Even if we assume that the consent to search by the defendant was voluntary, the evidence found as a result of that consent must be suppressed if the unconstitutional conduct in stopping the vehicle is not sufficiently attenuated from the subsequent seizure. *Brown v. Illinois,* 422 U.S. 590, 602–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975). *See also Dunaway v. New York,* 442 U.S. 200, 216, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979); *United States v. Taheri,* 648 F.2d 598, 601 (9th Cir.1981). In other words, the unconstitutional acts of an officer taint a consensual search unless there are sufficient intervening circumstances between the unlawful conduct and the consent to truly show that it was voluntary.

Although *Brown* dealt with the exclusion of a defendant's statements, it applies equally to contraband revealed by the consent search. *Taheri,* 648 F.2d at 601. The reason for the rule is to make sure that there is no causal connection between the unconstitutional conduct and the consent to search or the giving of inculpatory statements. When the connection between the unconstitutional conduct and the search is close, not only is the exclusion of the evidence more likely to deter similar police action, but the use of such evidence is more likely to compromise the integrity of the system. As a result, *Brown* requires us to review three factors in analyzing the circumstances surrounding the consent: First, the "temporal proximity" of the unconstitutional conduct and the consent; second, the presence of any intervening circumstances; and finally, the purpose and flagrancy of the official misconduct. The first two certainly deal with causal remoteness, and the last deals with broad general policy which would justify the exclusion of the evidence. *See United States v. Johnson,* 626 F.2d 753, 758 (9th Cir. 1980), *aff'd,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).

Under this analysis, because the search occurred almost immediately after Officer White stopped the defendant, there was temporal proximity between the unconstitutional conduct and the consent. There were no intervening circumstances between the police conduct and the consent. In addition, the misconduct by the police was clear. Agent Nordell felt that since the defendant was a "small dealer" with a small amount of contraband, the effort of obtaining a warrant was not palatable. Agent Hoke, when asked, simply did not even think about a warrant. The stop was made to obtain a consent search, and for no other reason. This type of conduct is exactly what the exclusionary rule was designed to deter. When police purposely effect an illegal detention in the hope that a consent search or custodial interrogation will yield incriminating evidence and statements, the exclusionary rationale is especially compelling. *See United States v. Perez–Esparza,* 609 F.2d 1284, 1289–90 (9th Cir.1979).

Therefore, we hold that the defendant was unconstitutionally detained without a warrant and that the consent search and the statement made to the officers were not sufficiently attenuated to prevent the exclusion of the evidence.

We reverse and remand for further proceedings consistent with this opinion.

EHRLICH and KLEINSCHMIDT, JJ., concur.