143 P.3d 379

The STATE of Arizona, Appellee,

v.

Rodney Joseph GANT, Appellant.

No. 2 CA–CR 2000–0430.

Court of Appeals of Arizona,
Division 2, Department B.

Sept. 20, 2006.

Review Granted Feb. 8, 2007.

Terry Goddard, Arizona Attorney General, By Randall M. Howe and Eric J. Olsson, Tucson, Attorneys for Appellee.

Law Offices of Thomas Jacobs, By Thomas Jacobs, Tucson, Attorney for Appellant.

## OPINION

BRAMMER, Judge.

¶ 1 After the United States Supreme Court vacated our decision in *State v. Gant*, 202 Ariz. 240, 43 P.3d 188 (App.2002),[1] we remanded this matter to the superior court, directing it to hold an evidentiary hearing and make factual findings on whether the officers' warrantless search of Gant's vehicle, incident to his arrest, violated the Fourth Amendment to the United States Constitution.[2] *State v. Gant*, No. 2 CA–CR 2000–0430 (memorandum decision filed April 28, 2004). The trial court found no violation. Gant now appeals from that ruling.[3] We reverse.

### Standard of Review and Background

¶ 2 Gant argues the trial court erred in denying his motion to suppress evidence seized from his vehicle. We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion, considering the evidence in the light most favorable to upholding the court's decision. *State v.*

*Paredes*, 167 Ariz. 609, 612, 810 P.2d 607, 610 (App.1991). We look only to the evidence presented at the hearing on the motion. *State v. Spears*, 184 Ariz. 277, 284, 908 P.2d 1062, 1069 (1996). We defer to the trial court's findings of fact if reasonable evidence supports them but review the court's legal determination de novo. *State v. Wyman*, 197 Ariz. 10, ¶ 5, 3 P.3d 392, 395 (App.2000).

¶ 3 Law enforcement officers arrested Gant on an outstanding warrant after he stepped out of an automobile they had seen him driving. After placing Gant in handcuffs and locking him in the back of a patrol car, and without obtaining a search warrant, the officers searched his vehicle and found cocaine in the pocket of a jacket they found in the vehicle. As we stated in our previous memorandum decision:

Before trial, Gant moved to suppress the cocaine, arguing that the officers had searched his vehicle illegally because no exception to the Fourth Amendment's warrant requirement applied. The trial court denied the motion, and Gant was convicted following trial of unlawful possession of cocaine for sale and unlawful possession of drug paraphernalia. He was sentenced to concurrent, mitigated prison terms, the longest of which was three years.

In our initial review of Gant's appeal, we concluded that the trial court had improperly denied his motion to suppress the evidence [because the police officer had initiated contact with Gant after Gant had left the vehicle]. The state petitioned our supreme court for review. The court denied the petition, and our mandate issued on October 23, 2002. The state then petitioned the United States Supreme Court for certiorari....

---

1. *Arizona v. Gant*, 540 U.S. 963, 124 S.Ct. 461, 157 L.Ed.2d 308 (2003).

2. Gant also challenges the trial court's ruling on the ground that the search violated the Arizona Constitution. But we decline to address that argument because Gant neither presented it to the trial court nor articulated on appeal how or why our interpretation of the relevant state constitutional provision should depart from our Fourth Amendment analysis. *See State v. Petzoldt*, 172 Ariz. 272, 276, 836 P.2d 982, 986 (App.1991) (state constitutional claim is abandoned when unsupported by specific argument).

3. We requested supplemental briefing on our jurisdiction to review the trial court's denial of Gant's motion to suppress the evidence. The state responded, citing *United States v. Villamonte–Marquez*, 462 U.S. 579, 581 n. 2, 103 S.Ct. 2573, 2575, 77 L.Ed.2d 22 n.2 (1983), that the Supreme Court's "reversal of [our] decision would reinstate the judgment of conviction and the sentence entered by the [trial court]," thereby vesting our jurisdiction over the appeal pursuant to A.R.S. § 13–4031. Gant filed nothing suggesting an absence of jurisdiction.

The United States Supreme Court granted the state's petition for certiorari on April 21, 2003, *Arizona v. Gant,* 538 U.S. 976, 123 S.Ct. 1784, 155 L.Ed.2d 664 (2003), and set the case for oral argument the following November. While the case was awaiting argument, the Arizona Supreme Court decided [*State v.] Dean,* [206 Ariz. 158, 76 P.3d 429 (2003),] which criticized our decision in *Gant* and rejected its analysis. The United States Supreme Court subsequently vacated both the scheduled argument and our resolution of Gant's appeal and remanded the case to us for reconsideration in light of *Dean. Arizona v. Gant,* [540] U.S. [963], 124 S.Ct. 461, 157 L.Ed.2d 308 (2003).

*State v. Gant,* No. 2 CA–CR 2000–0430, ¶¶ 3–5 (memorandum decision filed April 28, 2004). After our opinion had been vacated, and because the facts regarding the search had only been "stipulated to by the parties . . . without the benefit of testimony by witnesses," we remanded the case to the trial court for an evidentiary hearing on the legality of the warrantless search. *Id.* ¶¶ 1, 2.

¶ 4 At the evidentiary hearing, Tucson police officers testified that they had first contacted Gant at a residence after responding to a tip about narcotics activity there. Gant told them that the owner of the residence was not present, so the officers departed after obtaining Gant's name. The officers then conducted a routine record check and found Gant had a suspended driver's license and an outstanding warrant for driving with a suspended license. The officers returned later in the evening, arrested one person at the residence for possession of drug paraphernalia and another for giving false information, and then saw Gant drive up to the residence. As Gant stepped out of the vehicle, an officer called to him and Gant walked toward the officer. The officer placed Gant under arrest about eight to ten feet from Gant's car. Gant was handcuffed and locked into the back of a nearby patrol car.

¶ 5 Within one to three minutes of the arrest, two officers searched Gant's car. Therein, the police found contraband and a weapon. At the time of the search, the other arrestees had also been secured: both had been placed into handcuffs and locked into the back of patrol cars. The residence's owner was not present at this time and, although officers "were anticipating [her] arrival," nothing in the record suggests she returned to the home that night.

¶ 6 Based on the officers' uncontradicted testimony, the trial court found that Gant's vehicle had been "searched almost immediately after he was placed in a patrol car" and that Gant "was apparently at most 8–10 feet from the car" when he was arrested. The court therefore denied the motion to suppress after concluding that, under the "recent occupancy" test of *State v. Dean,* 206 Ariz. 158, ¶ 30, 76 P.3d 429, 437 (2003), the "search was conducted immediately after arrest," and Gant was arrested in "close proximity" to his vehicle. This appeal followed.

## Discussion

¶ 7 The Fourth Amendment proscribes all "unreasonable searches and seizures," which, under most conditions, requires the state to obtain a warrant before conducting a search. U.S. Const. amend. IV; *see Dean,* 206 Ariz. 158, ¶ 8, 76 P.3d at 432. A trial court presumes warrantless searches are unreasonable, and the state bears the burden of establishing that evidence has been lawfully seized. *See State v. Ault,* 150 Ariz. 459, 464, 724 P.2d 545, 550 (1986). A warrantless search is presumptively unreasonable and, therefore, unconstitutional unless it "falls within one of the few specifically established and well-delineated exceptions to the constitutional warrant requirement." *State v. Kempton,* 166 Ariz. 392, 395–96, 803 P.2d 113, 116–17 (App.1990). One exception courts have recognized allows officers to conduct a warrantless search of an arrestee's person and, contemporaneous to the arrest, the area within the arrestee's immediate control. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); *Dean,* 206 Ariz. 158, ¶¶ 11–12, 76 P.3d at 432–33.

¶ 8 In *Chimel,* the Supreme Court explained the rationale justifying the exception:

When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule.

395 U.S. at 762–63, 89 S.Ct. at 2040. Thus, the exception to the warrant requirement for such searches is premised on the "twin aims" of officer safety and preservation of evidence. *Dean*, 206 Ariz. 158, ¶ 13, 76 P.3d at 433.

■ ¶ 9 Gant argues that, because he and the other suspects were handcuffed and either locked in the police vehicles or otherwise secured, neither rationale for departing from the warrant requirement existed at the time the search was conducted. In essence, Gant contends that, by the time the search occurred, no officer could have reasonably believed that the arrestees presented any risk of reaching a weapon or destroying evidence located in his car. We agree with Gant that our analysis must be guided by the rationales underlying the search incident to arrest exception to the warrant requirement and that these rationales are absent under the circumstances here.

■ ¶ 10 In *Dean*, our supreme court addressed the search of a vehicle incident to a defendant's arrest when the arrest was remote in time and location from the defendant's occupancy of the vehicle. 206 Ariz. 158, ¶¶ 3–4, 76 P.3d at 431. A unanimous court noted that *Chimel*, the seminal United States Supreme Court case authorizing warrantless searches incident to arrest, had emphasized that the scope of such a search " 'must be "strictly tied to and justified by" the circumstances which rendered its initiation permissible.' " *Dean*, 206 Ariz. 158, ¶ 12, 76 P.3d at 433, *quoting Chimel*, 395 U.S. at 762, 89 S.Ct. at 2039, *quoting Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968). Thus, the Arizona Supreme Court has reminded us that a warrantless search incident to arrest is not only justified, but is also limited, by the need to promote officer safety and prevent destruction of evidence. In that context, the supreme court has instructed us to examine "whether the totality of the facts ... presents the kind of situation that justifies dispensing with the warrant requirement." *Dean*, 206 Ariz. 158, ¶ 34, 76 P.3d at 437. Indeed, the *Dean* court invalidated the search in the case before it precisely because "neither of the justifications for a warrantless search of the vehicle—protection of the arresting officers and preservation of the evidence—[wa]s present." *Id.* ¶ 32, 76 P.3d 429.

¶ 11 We are mindful the United States Supreme Court has stated that "[e]very arrest must be presumed to present a risk of danger to the arresting officer." *Washington v. Chrisman*, 455 U.S. 1, 7, 102 S.Ct. 812, 817, 70 L.Ed.2d 778 (1982). But, here, the state has presented no concrete evidence whatsoever that, when the officers searched Gant's car, there was any risk of the arrestees acquiring a weapon in Gant's car or destroying any evidence therein.[4] To the contrary, both of the relevant witnesses, Officers Todd Griffith and Robert Reed, testified that Gant, once handcuffed and secured in the back of a patrol car, posed no risk of returning to his car and tampering with any items in it.[5] The officers also testified that

---

4. The officers did testify generally that "officer safety is always an issue" during illegal drug sale investigations because it is not unusual for the people involved to have weapons. Two officers also testified that they had been told that a female who owned the house was not present at the scene and might return to the home. However, as discussed *infra*, both officers conceded, in essence, that there was no reasonable possibility the civilians actually at the scene—Gant and

two additional arrestees—could have accessed Gant's vehicle.

5. Officer Reed testified that, at the time of the search of Gant's vehicle, Gant "had been secured" and therefore "no longer presented a threat to me or anyone else because he had no access to anything else." Officer Griffith conceded there had been no reasonable possibility Gant could escape from the patrol car and get

the two arrestees at the scene were similarly confined in handcuffs and seated in the back of patrol cars.[6] Thus, although we presume an arrest both poses risks to officer safety and creates an incentive for arrestees to destroy evidence, those risks had ceased to exist at the time of the search in this case.

¶ 12 The state contends that the United States Supreme Court's holdings in *Thornton v. United States*, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), and *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), compel a different result. Although the state is correct that the facts of *Thornton* are "not meaningfully distinguishable" from the facts in this case, *Thornton* resolved a different issue: whether an officer may conduct a search incident to arrest "even when an officer does not make contact until the person arrested has left the vehicle."[7] 541 U.S. at 617, 124 S.Ct. at 2129. And, although Justices Scalia and Ginsberg addressed the precise issue raised here in a concurring opinion—whether officers may conduct a search incident to arrest once the arrestee is handcuffed and secured in the back of a patrol car[8]—a majority of the Court specifically declined to reach that issue because it had not been briefed by the litigants. *Id.* at 624 n. 4, 124 S.Ct. at 2132 n. 4 ("Whatever the merits of Justice Scalia's opinion concurring in the judgment, this is the wrong case in which to address them."); *id.* at 625, 124 S.Ct. at 2133 (O'Connor, J., concurring) (declining to reach the issue "in the context of a case in which neither the Government nor the petitioner has had a chance to speak to its merit"). Accordingly,

we cannot agree with the state's contention that this case is controlled by *Thornton.* To the contrary, the concurring opinions in *Thornton* demonstrate that the issue we address is far from settled.[9]

¶ 13 In *Belton*, the defendant challenged the scope of an otherwise valid search of his car, contending the officers had searched parts of the passenger compartment he could not have possibly reached had he desired to destroy evidence or seize a weapon. 453 U.S. at 455–56, 101 S.Ct. at 2861–62. Rejecting his claim, the Court found that "articles inside the ... passenger compartment of an automobile are ... generally ... within 'the area ... an arrestee might reach in order to grab a weapon or evidentiary ite[m]' " and, therefore, "as a contemporaneous incident" to the lawful arrest, officers were entitled to search the entire passenger compartment of a vehicle. *Id.* at 460, 101 S.Ct. at 2864, *quoting Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040 (brackets in *Belton* ). In so holding, the Court emphasized that " '[a] single, familiar standard is essential to guide police officers' " and implied that it had erected a bright-line rule to relieve officers in the field from having to make hairline distinctions based on subtle nuances. *Id.* at 458, 101 S.Ct. at 2863, *quoting Dunaway v. New York*, 442 U.S. 200, 213–14, 99 S.Ct. 2248, 2256–57, 60 L.Ed.2d 824 (1979).

¶ 14 The state contends we should employ the same approach here by ruling that, once officers arrest a recent occupant of a vehicle, they should be entitled to search that vehicle

---

into his own vehicle. Griffith also testified that Gant had been locked in the back of the patrol vehicle and that the back doors "can't [be] open[ed] from the inside."

6. Both officers testified that the additional male arrestee had been confined to a police car and handcuffed when the car was searched. Officer Reed specifically recalled that the female arrestee had likewise been handcuffed and secured in a patrol car at the time of the search. Officer Griffith corroborated that the female had been arrested and handcuffed by the time of the search, but could not recall whether she had been placed in a patrol car.

7. In this appeal, Gant does not contend the search of his vehicle was invalid for that reason.

8. *See* 541 U.S. at 625, 124 S.Ct. at 2133 (concluding search not justified under *Chimel* exception when risk that the defendant would " 'grab a weapon or evidentiary ite[m]' from his car was remote in the extreme") (Scalia, J., and Ginsberg, J., concurring), *quoting Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040 (brackets in *Thornton* ).

9. At oral argument, the state asserted that we should look at a later part of footnote four in *Thornton*, in which the plurality asserted that Justice Scalia's position in his concurrence would, "for all intents and purposes, [overrule] our established constitutional precedent." 541 U.S. at 624 n. 4, 124 S.Ct. at 2132 n. 4. However, this footnote was only endorsed by four members of the Court.

without having to distinguish whether the rationales justifying the search apply under the specific circumstances of the case. In this vein, the state maintains that whether the two *Chimel* rationales are present is "irrelevant" because "those risks are presumed to exist" once an arrest occurs. It relies on *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973), which held:

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.... It is the fact of the lawful arrest which establishes the authority to search.... [10]

*See also Michigan v. Long,* 463 U.S. 1032, 1050 n. 14, 103 S.Ct. 3469, 3481 n. 14, 77 L.Ed.2d 1201 (1983) ("[T]he 'bright line' [the Supreme Court] drew in *Belton* clearly authorizes such a[n] [automobile] search whenever officers effect a custodial arrest.").

¶ 15 We acknowledge the principles set forth in *Belton* and *Robinson,* but we disagree that they apply here. First, our own supreme court has specifically rejected such a broad application of the *Belton–Robinson* bright-line rule. In *Dean,* the court explained that, "although *Belton* provided clear guidance with respect to th[e] *spatial* limitation" on the scope of an otherwise lawful search, *Belton* did not signal a retreat from the limitations on the justification for conducting a search in the first instance. 206 Ariz. 158, ¶¶ 17–18, 76 P.3d at 434. As the court observed, the *Belton* majority clarified that its bright line rule " 'in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial ar-

rests.' " *Id.,quoting Belton,* 453 U.S. at 460 n. 3, 101 S.Ct. at 2864 n. 3.

¶ 16 Second, far from concluding that the constitutional basis for a search incident to arrest is always presumed from the inherent dangers of an arrest, the *Belton* majority underscored the continuing vitality of its two previous opinions invalidating searches incident to arrest when the appropriate constitutional bases for the exception to the warrant requirement did not exist. 453 U.S. at 461–62, 101 S.Ct. at 2864–65 (distinguishing *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and observing that, unlike the circumstances in *Belton,* "neither of those cases involved an arguably valid search.").

¶ 17 In short, neither the Arizona Supreme Court nor the United States Supreme Court has characterized *Belton* as relieving the state of its duty to demonstrate the appropriate constitutional basis for a search conducted incident to an arrest. Rather, both courts have restricted the *Belton* reasoning to questions regarding the spatial scope of an already valid search.[11] *See Belton,* 453 U.S. at 460 n. 3, 101 S.Ct. at 2864 n. 3 ("Our holding today does no more than determine the meaning of *Chimel's* principles in this particular and problematic conte[x]t."). In *Dean,* the court summarized the flaw in the state's reasoning: "While the bright-line rule announced in *Belton* relieves the police of demonstrating that a particular portion of the passenger compartment is within the 'immediate control' of an arrestee, it does not purport to dispense with all such analysis as to whether the police may search the vehicle at all." *Dean,* 206 Ariz. 158, ¶ 33, 76 P.3d at 437.

¶ 18 *Belton* is readily distinguishable for several other reasons as well. In that case, a

---

10. *Robinson* involved a search of a person rather than the search of a person's area of control. 414 U.S. at 224, 94 S.Ct. at 471. The Court distinguished search of a person from other searches incident to arrest. *Id.; see generally* 3 Wayne R. LaFave, *Search and Seizure,* §§ 6.3(c), 7.1(b) (4d ed.2004).

11. *Robinson* is similarly distinguishable. There, the defendant suggested that his person could not be searched incident to arrest absent independent probable cause to believe contraband or weapons might be found on him. 414 U.S. at 227, 94 S.Ct. at 473. But Gant does not contend that the search here was invalid merely because the state lacked independent probable cause to believe the search would be fruitful.

lone police officer had searched the car contemporaneously with his arrest of the four occupants of the car—none of whom was secured in a patrol vehicle or, apparently, restrained in handcuffs. 453 U.S. at 455–56, 101 S.Ct. at 2861–62. Under that scenario, the risk to officer safety posed by the potential presence of any weapons in the arrestee's car was, at the time of the search, pronounced. Here, by contrast, at least four officers were present on the scene, and all three suspects were handcuffed and locked in patrol cars. Moreover, the *Belton* bright-line rule itself includes an express requirement that the search in question be a "contemporaneous incident of th[e] arrest." *Id.* at 460, 101 S.Ct. at 2864. Here, although officers searched Gant's car shortly after completing their arrest and securing him in the patrol car, the dangers of the arrest that would trigger the *Chimel* exception to the warrant requirement no longer existed by that time. Thus, the officers did not search Gant's car contemporaneously with his arrest if we define "contemporaneously" with reference to the *Chimel* rationales for permitting a warrantless search at all.[12]

¶ 19 The state has cited cases from both the Ninth Circuit Court of Appeals and other states that have upheld *Belton* searches under circumstances similar or identical to those presented here. And our dissenting colleague cites Arizona authority predating *Dean* to the same effect. In light of our supreme court's scholarly and exhaustive analysis of the requirements set forth in *Chimel* and *Belton* and the clear direction that court has given us thereby, we are not persuaded to follow those cases. *See City of Phoenix v. Leroy's Liquors, Inc.,* 177 Ariz. 375, 378, 868 P.2d 958, 961 (App.1993) ("[W]e are bound by decisions of the Arizona Supreme Court and have no authority to . . . disregard them."); *see also Weatherford v. State,* 206 Ariz. 529, ¶ 9, 81 P.3d 320, 324 (2003) ("[S]tate courts are not bound by decisions of federal circuit courts."); *Kotterman v. Killian,* 193 Ariz. 273, ¶ 68, 972 P.2d 606, 624 (1999) (decisions of other state courts are "useful" but "do not control Arizona law"). And we do not believe our supreme court stands alone in its analysis of *Belton* and *Chimel.* As discussed above, several justices of the United States Supreme Court have opined that the application of the *Belton* doctrine under circumstances identical to those here would stretch that case "beyond its breaking point." *Thornton,* 541 U.S. at 625, 124 S.Ct. at 2133. (Scalia, J., concurring); *see also id.* at 624, 124 S.Ct. at 2133 (O'Connor, J., concurring) (criticizing lower court decisions that "treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of *Chimel v. California.*").

¶ 20 The dissenting opinion expresses concern that today's decision will encourage officers motivated to conduct investigations of suspects' vehicles to intentionally conduct

---

**12.** Although we have scrupulously followed the analytical framework compelled by *Dean* for evaluating the issue here, the dissent suggests that we have abandoned the rule it applied in resolving the specific case before it—the recent occupancy test. But the recent occupancy test is designed to assess the constitutionality of conducting a vehicle search under a *Chimel* rationale when a defendant is no longer within the vehicle at the moment of arrest. Thus, it focuses on the lapse of time between occupancy and arrest. *See Dean,* 206 Ariz. 158, ¶¶ 33–34, 76 P.3d at 437 (finding search unconstitutional because of "the long lapse of time between the arrest and Dean's exit from the vehicle"). Here, the trial court correctly found that Gant was arrested soon enough after his occupancy that a *Chimel* search was not barred on that basis.

But the dissent overlooks that a defendant's recent occupancy of a vehicle is a necessary, but not sufficient, precondition of a valid *Chimel*

search of that vehicle. As discussed, the United States Supreme Court also requires that the search be contemporaneous with the arrest. For example, a warrantless search of a vehicle conducted hours or days after an arrest could scarcely be justified on *Chimel* grounds—even if the defendant's arrest initially occurred close in time to the defendant's occupancy of the vehicle. *See United States v. Chadwick,* 433 U.S. 1, 11–12, 97 S.Ct. 2476, 2485–86 (1977) (search of footlocker long after defendants were securely in custody improper under *Chimel* rationale). Thus, we neither reject nor overlook the recent occupancy test when we adopt the analytical framework set forth in *Dean.* Rather, on this appeal by Gant, we address a different set of facts involving a different specific challenge to the search of a defendant's vehicle. Neither logic nor any language in *Dean* counsels us to resolve this case with exclusive reference to a test inapplicable to the specific challenge raised.

searches of those vehicles before the arrestees are safely secured. But this reasoning erroneously "assumes that, one way or another, the search must take place." *Id.* at 627, 124 S.Ct. at 2134 (Scalia, J., concurring). As Justice Scalia stated in *Thornton,* "conducting a *Chimel* search is not the Government's right; it is an exception—justified by necessity—to a rule that would otherwise render the search unlawful." *Id.* And nothing about our opinion today would prevent officers from taking whatever steps they believe necessary to protect their safety. *See id.* at 627, 124 S.Ct. at 2134–35 (Scalia, J., concurring) ("If 'sensible police procedures' require that suspects be handcuffed and put in squad cars, then police should handcuff suspects, put them in squad cars, and not conduct the search."). We simply hold that a search of an arrestee's vehicle is not one of those steps once the arrestee poses no further risk of gaining access to it.

¶ 21 Our supreme court has instructed us to consider the rationales behind the search incident to arrest exception to the warrant requirement when examining the searches of a vehicle incident to arrest. *Dean,* 206 Ariz. 158, ¶¶ 32–34, 76 P.3d at 437. We have done so and find they were not satisfied when Gant's vehicle was searched. Accordingly, we reverse the trial court's ruling and hold that the evidence seized should be suppressed.

CONCURRING: PETER J.
ECKERSTROM, Presiding Judge.

ESPINOSA, Judge, dissenting.

¶ 22 I respectfully dissent. The majority arrives at its conclusion by seizing on *dicta* in *State v. Dean,* 206 Ariz. 158, ¶ 34, 76 P.3d 429, 437 (2003), to, in essence, single-handedly discard the bright-line rule set forth in *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981), and followed in scores of cases since, including those in Arizona such as *State v. Hein,* 138 Ariz. 360, 365, 674 P.2d 1358, 1363 (1983); *State v. Hanna,* 173 Ariz. 30, 32, 839 P.2d 450, 452 (App.1992); *State v. Hersch,* 135 Ariz. 528, 531, 662 P.2d 1035, 1038 (App. 1982); and *Dean* itself, 206 Ariz. 158, ¶ 17, 76 P.3d at 434. In doing so, today's decision

effectively attempts to roll back the clock to the previous "disarray" among state and federal courts as to "the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants." *Belton,* 453 U.S. at 459 n. 1, 459, 101 S.Ct. at 2863 n. 1, 2863. This is an outcome neither contemplated nor sanctioned by our supreme court in *Dean,* and I fear this court is getting it wrong for the second time.

¶ 23 The majority essentially ignores that *Dean* expressly adopted the "recent occupancy" test, which determines a vehicle search is within the limits of *Belton* when the defendant is arrested in close proximity to the vehicle immediately after the defendant exits the automobile. *Dean,* 206 Ariz. 158, ¶ 17, 76 P.3d at 434, *citing United States v. Thornton,* 325 F.3d 189, 194–95 (4th Cir.2003), *aff'd, Thornton v. United States,* 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (*Thornton II*); and *Glasco v. Commonwealth,* 257 Va. 433, 513 S.E.2d 137, 141–42 (1999). Indeed, the court in *Dean* explicitly held that to be "the correct rule," *id.,* ¶ 30, 76 P.3d 429, and applying it to the facts before it, concluded: "[W]hen, as here, the arrest occurs long after the defendant had left the vehicle and far from the vehicle, the warrant requirement of the Fourth Amendment applies." *Id.* ¶ 34, 76 P.3d 429. The majority disregards that holding, instead contending "the *Dean* court invalidated the search in the case before it precisely because 'neither of the justifications for a warrantless search of the vehicle—protection of the arresting officers and preservation of evidence—[wa]s present.'" ¶ 10, *supra, quoting Dean,* 206 Ariz. 158, ¶ 32, 76 P.3d at 437. But the majority omits the court's key qualifying phrase directly preceding the quoted language, "[u]nder the circumstances of this case," as well as the court's principal reasoning:

> Under any reasoned analysis, Dean simply was not a "recent occupant" of the Jeep for *Belton* purposes when he was arrested. He had not occupied the vehicle for some two and one-half hours, and his arrest occurred not in close proximity to the car, but instead inside the house.

*Id.* ¶ 32, 76 P.3d 429 (emphasis added). The majority also selectively quotes from *Dean's* fact-bound observation that, in its entirety, reads: "[T]he issue is not whether the defendant has 'evaded' a search by departing the vehicle, but rather *whether the totality of the facts still presents the kind of situation that justifies dispensing with the warrant requirement.*" *Id.* ¶ 34, 76 P.3d 429. It is apparent the language the majority carefully culls from *Dean* simply cannot be separated from the unique facts with which the court was faced, particularly when relied on to avoid the *Belton* rule on the very type of situation and facts that rule was designed to address.

¶ 24 The majority goes on to sidestep *Dean's* true holding by attempting to distinguish the facts at hand from *Belton's* rationale. But it cannot reasonably be maintained that the search of Gant's vehicle a mere "one to three minutes" after Gant had been secured can be considered anything but contemporaneous and proximate to his occupancy of the vehicle and arrest. Gant's car was searched within scant minutes after he exited it, and he was at the scene while the search was conducted. As noted above, the *Dean* court specifically adopted the *Glasco* recent occupancy rule and noted that "concepts such as 'close proximity' and 'immediately after' are of course subject to factual analysis." *Dean,* 206 Ariz. 158, ¶ 30, 76 P.3d at 437, *quoting Glasco,* 513 S.E.2d at 142. The court emphasized it was the combination of Dean's temporal and spatial distance from the vehicle that supported its decision. *Id.,* ¶ 31, 513 S.E.2d 137 ("But we have been able to discover no case, and the State has cited none, in which a search of the passenger compartment of a vehicle was upheld under *Belton* when the driver was arrested as long after he left the vehicle *and* as far from vehicle as was the defendant here.").

¶ 25 The state, in the supplemental brief this court requested, makes a different point that bears mentioning. *Belton's* bright-line rule minimizes the risks inherent in arresting recent occupants of automobiles by permitting police officers to make the arrest and secure the arrestee away from the vehicle before conducting a search. This avoids the greater potential dangers involved in attempting, in the name of *Chimel v. Califor-*

*nia,* 395 U.S. 752, 89 S.Ct. 2034, 2043, 23 L.Ed.2d 685 (1969), alone, to conduct the arrest and search while the occupant is in or near the automobile, which in many instances, the police physically might be able to do. *See also Thornton II,* 541 U.S. at 621, 124 S.Ct. at 2131 (custodial arrest is "fluid" and danger to police " 'flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty' "), *quoting United States v. Robinson,* 414 U.S. 218, 235 n. 5, 94 S.Ct. 467, 476 n. 5, 38 L.Ed.2d 427 (1973). Today's decision, however, would return Arizona law enforcement officers to the uncertain and dangerous environment in which, "fac[ing] a highly volatile situation," *Thornton II,* 541 U.S. at 621, 124 S.Ct. at 2131, officers must "calculate the probability that weapons or destructible evidence may be involved," *State v. Curiel,* 130 Ariz. 176, 181, 634 P.2d 988, 993 (App.1981); "divert [their] attention to a search while the defendant [i]s free and close at hand," *State v. Kelley,* 107 Ariz. 8, 9, 480 P.2d 658, 659 (1971); and "estimate[ ] ... what items were or were not within reach of an arrestee at any particular moment," *Thornton II,* 541 U.S. at 623, 124 S.Ct. at 2132, in order to do their hazardous jobs. *See Washington v. Chrisman,* 455 U.S. 1, 7, 102 S.Ct. 812, 817, 70 L.Ed.2d 778 (1982) ("Every arrest must be presumed to present a risk of danger to the arresting officer.").

¶ 26 Contrary to the majority's view, the grave concerns for officer safety do not "assume[ ] that, one way or another, the search must take place," *Thornton II,* 541 U.S. at 627, 124 S.Ct. at 2134 (Scalia, J., concurring), beyond *Belton's* up to now, bright line contours. There is, however, a practical and unfortunate effect of today's decision that will encourage police to search an arrestee's immediate area or vehicle without delay and before he or she is safely secured, precisely the real-world danger that *Belton* and its progeny have sought to ameliorate while balancing the requirements of the Fourth Amendment. *See id.* at 623, 124 S.Ct. at 2132; *Kelley,* 107 Ariz. at 9–10, 480 P.2d at 659–60; *Curiel,* 130 Ariz. at 181, 634 P.2d at 993.

¶ 27 Finally, this is not an outcome the trial court could reasonably extrapolate, par-

ticularly in view of *Dean* and the recent decision by the Supreme Court in *Thornton II,* which involved facts virtually identical to those presented here. Although the majority correctly points out that *Thornton II* addressed a narrower legal question, the majority characterizes the present issue as "far from settled" based on concurring comments not contained in the *Thornton II* plurality opinion. ¶ 12, *supra.* And, while the majority purports to be merely following "the clear direction [the *Dean* ] court has given us," it is in my view a backwards journey that *Dean* neither maps out nor supports. ¶ 14, *supra.*

¶ 28 Accordingly, I would uphold the trial court's decision finding the search of Gant's vehicle within the bounds of *Belton, Dean,* and the Fourth Amendment.