SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-09-0188-PR |
| Appellee, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division Two |
| | ) | No. 2 CA-CR 07-0365 |
| JOSE SALVADOR GUILLEN, | ) | |
| | ) | Pima County |
| Appellant. | ) | Superior Court |
| | ) | No. CR20064552 |
| | ) | |
| | ) | |
| | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Pima County
The Honorable Michael J. Cruikshank, Judge

**AFFIRMED**
_____

Opinion of the Court of Appeals Division Two
222 Ariz. 81, 213 P.3d 230 (2009)

**VACATED**
_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                    Phoenix
     By    Kent E. Cattani, Chief Counsel
           Criminal Appeals/Capital Litigation Section
           Joseph L. Parkhurst, Assistant Attorney General  Tucson
Attorneys for State of Arizona

EMILY DANIES                                              Tucson
Attorney for Jose Salvador Guillen
_____

**R Y A N**, Justice

¶1      The question presented is whether a resident's consent
to search her home is invalid because it was preceded by an

allegedly illegal search of which the resident was unaware. We hold that the consent to search is valid under the circumstances.

<strong>I</strong>

¶2     In March 2006, police received information that Jose Guillen was storing marijuana in his garage; no investigation took place at that time. Eight months later, after confirming that the house was unoccupied, police called a narcotics officer with a drug-sniffing dog to the scene. The home was not enclosed by a fence and no signs prohibited public access to the front of the house. The garage was attached to the house and accessible by a driveway. The narcotics officer and the dog walked up the driveway to the garage door. After sniffing the door's bottom seam, the dog began barking and scratching, indicating that he had detected the odor of marijuana.

¶3     One to two hours later, Guillen's wife returned home. Officers approached her in the driveway and asked if they could continue talking inside. She agreed. Without mentioning the dog sniff, the officers told her that they had information that marijuana was being stored at the house and asked for permission to search it. Mrs. Guillen granted permission and led the officers to the garage, where they detected a "strong odor of marijuana." The narcotics officer then brought the dog into the garage and the dog signaled at an unlocked freezer that he

detected the odor of marijuana. Mrs. Guillen permitted the officers to open that freezer, which was empty but smelled of marijuana. After obtaining a telephonic search warrant, the officers searched two locked freezers and found bales of marijuana.

¶4 Before trial, Guillen moved to suppress evidence discovered in his garage and his subsequent statements to the police, arguing that the dog sniff violated his rights under the Fourth Amendment of the United States Constitution and Article 2, Section 8 of the Arizona Constitution. The superior court denied Guillen's motion, concluding that whether the dog sniff was an illegal search was irrelevant because Mrs. Guillen voluntarily consented to the search.

¶5 A jury subsequently convicted Guillen of possession of marijuana for sale and drug paraphernalia, and the trial court sentenced him to prison.

## II

¶6 A divided panel of the court of appeals reversed and remanded. *State v. Guillen*, 222 Ariz. 81, __ ¶ 33, 213 P.3d 230, 240 (2009). The majority began by analyzing the dog sniff under the Fourth Amendment and Article 2, Section 8 of the Arizona Constitution. The majority concluded that "a dog sniff reaching into a home does not rise to the level of a 'cognizable infringement' under the Fourth Amendment to the United States

3

Constitution." *Id.* at __ ¶ 17, 213 P.3d at 234 (quoting *Illinois v. Caballes*, 543 U.S. 405, 409 (2005)). However, citing *State v. Ault*, 150 Ariz. 459, 466, 724 P.2d 545, 552 (1986), and *State v. Bolt*, 142 Ariz. 260, 264-65, 689 P.2d 519, 523-24 (1984), which held that Article 2, Section 8 is more specific than its federal counterpart in protecting the home, the court of appeals concluded that "a canine sniff that occurs at the threshold of a home, and collects information from inside, intrudes upon an expectation of privacy that our society has long recognized as reasonable." *Id.* at __ ¶ 24, 213 P.3d at 237. But because Article 2, Section 8 "contains no language comparable to that of its federal counterpart requiring a warrant for all searches in the home," *id.* at __ ¶ 30, 213 P.3d at 239, the majority concluded that "officers need only a reasonable suspicion that contraband may be found in a home . . . to conduct a canine sniff search of the exterior of the home." *Id.* The court remanded the matter for a determination of whether the officers had reasonable suspicion before conducting the dog sniff. *Id.* at __ ¶ 30, 213 P.3d at 239-40.

¶**7** Turning to the issue of Mrs. Guillen's consent, the court of appeals stated that if the trial court on remand found that the officers did not have reasonable suspicion, it then would have to "determine whether the officers used the information acquired to trigger the next step in their

4

investigation – asking for consent to search the house – or whether . . . they would have taken that step regardless of the outcome of the dog sniff." *Id*. at __ ¶ 32, 213 P.3d at 240.

¶8     Dissenting, Judge Espinosa was "unconvinced [that] the trial court erred in concluding Mrs. Guillen's consent obviated the need to discuss the constitutionality of the dog sniff[,]" *id.* at __ n.13 ¶ 34, 213 P.3d at 241 n.13, but primarily challenged the majority's conclusion that a dog sniff, conducted from the officer's lawful position outside the home, violates the state constitution. *Id.* at __ ¶¶ 37-55, 213 P.3d at 243-48.

¶9     The State petitioned for review, arguing that the court of appeals erred in interpreting the state constitution and, in any event, Mrs. Guillen's voluntary consent obviated the need to reach the state constitutional question. Because this case involves a matter of first impression, we granted review. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes § 13-4032 (2001).

### III

#### A

¶10     The Fourth Amendment provides in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Unlawful entry into a home is the

5

"chief evil" against which the provision protects.  *See, e.g.,* *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)).  It "applies to action by state officers under the Due Process Clause of the Fourteenth Amendment."  *State v. Davolt*, 207 Ariz. 191, 202 ¶ 23, 84 P.3d 456, 467 (2004) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)).  Arizona's constitutional counterpart to the Fourth Amendment, Article 2, Section 8, provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."  *See* *Bolt*, 142 Ariz. at 264-65, 689 P.2d at 523-24 (observing that Arizona's constitutional provision is "specific in preserving the sanctity of homes and in creating a right of privacy").  Thus, as a general rule police must obtain a warrant before searching premises in which an individual has a reasonable expectation of privacy.  *Katz v. United States,* 389 U.S. 347, 356-57 (1967); *State v. Jones,* 185 Ariz. 471, 480, 917 P.2d 200, 209 (1996); *Bolt*, 142 Ariz. at 265, 689 P.2d at 524.

¶11    One long recognized exception to the warrant requirement is consent.  *Davolt*, 207 Ariz. at 203 ¶ 29, 84 P.3d at 468 (citing *Katz*, 389 U.S. at 357).  To be valid, consent must be voluntarily given, and whether the consent was voluntary "is a question of fact to be determined from the totality of the circumstances."  *Id*. (citing *Schneckloth v. Bustamonte*, 412 U.S.

6

218, 248-49 (1973)).  Consent must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth,* 412 U.S. at 228.  The state bears the burden of showing that consent to search was voluntary.  *See United States v. Delgadillo-Velasquez*, 856 F.2d 1292, 1299 (9th Cir. 1988); *State v. Monge*, 173 Ariz. 279, 281, 842 P.2d 1292, 1294 (1992).

¶12    Here, defense counsel made clear at the suppression hearing below that Guillen was not challenging the voluntariness of Mrs. Guillen's consent or her authority to consent to the search.  *See, e.g.*, *United States v. Matlock*, 415 U.S. 164, 171 (1974) (holding that voluntary consent to search premises by occupant who possesses common authority to the premises is valid against absent co-occupant); *State v. Lucero*, 143 Ariz. 108, 109, 629 P.2d 287, 288 (1984) (recognizing exception to warrant requirement where "person having authority to consent to a warrantless search[] does so").  Rather, he argued that the first dog sniff at the garage perimeter was illegal, and it necessarily tainted Mrs. Guillen's subsequent consent to search, requiring exclusion of the evidence discovered in the garage.

**B**

¶13    Evidence seized following consent to a search must be suppressed if the consent is tainted by a prior constitutional violation.  *Brown v. Illinois,* 422 U.S. 590, 602 (1975); *United States v. Taheri*, 648 F.2d 598, 601 (9th Cir. 1981); *Davolt*, 207

7

Ariz. at 203 ¶ 29, 84 P.3d at 468.  Exclusion deters police misconduct "by removing the incentive for such conduct."  *State v. Booker,* 212 Ariz. 502, 504 ¶ 13, 135 P.3d 57, 59 (App. 2006) (citing *United States v. Calandra,* 414 U.S. 338, 347 (1974)); *State v. Kempton,* 166 Ariz. 392, 398, 803 P.2d 113, 119 (App. 1990).[1]  Suppression, however, is not required if the unconstitutional conduct is sufficiently attenuated from the subsequent seizure.  *See Davolt*, 207 Ariz. at 203 ¶ 29, 84 P.3d at 468; *Monge,* 173 Ariz. at 281, 842 P.2d at 1294.  "[T]he unconstitutional acts of an officer taint a consensual search unless there are sufficient intervening circumstances between the unlawful conduct and the consent to truly show that it was voluntary."  *Kempton,* 166 Ariz. at 398, 803 P.2d at 119.

¶14     In *Brown*, the Supreme Court set forth a test to determine whether the taint of the illegal conduct is sufficiently attenuated from evidence subsequently obtained by voluntary consent.  422 U.S. at 603-04.  Under that test, courts consider (1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) "particularly, the purpose and flagrancy of the official misconduct."  *Id.; see also Davolt,* 207 Ariz. at

---

[1]  This Court has held that for purposes of the Arizona Constitution, the "exclusionary rule to be applied as a matter of state law is no broader than the federal rule."  *Bolt,* 142 Ariz. at 269, 689 P.2d at 528.

203 ¶ 30, 84 P.3d at 468.[2]

## C

**¶15**    Assuming, without deciding, that the dog sniff violated Article 2, Section 8, we conclude that Mrs. Guillen's consent was valid because under *Brown*'s three-factor test, intervening circumstances obviated any alleged taint and the first dog sniff conducted from outside the garage was not flagrant police misconduct.

**¶16**    Mrs. Guillen's consent was obtained within a few hours after the dog sniff took place.  Although this fact favors Guillen, *see Delgadillo-Velasquez,* 856 F.2d at 1300 (citing cases in which courts have held invalid consent given between a few minutes and a few hours after the illegal conduct), it does not weigh heavily in our analysis because of the presence of intervening circumstances.  *See State v. Reffitt*, 145 Ariz. 452, 459, 702 P.2d 681, 688 (1985) (noting that the "factor of temporal proximity is scarcely outcome determinative" and "is often the least helpful of [*Brown*'s] three criteria").

**¶17**    Mrs. Guillen's lack of knowledge of the dog sniff

---

[2]    In analyzing whether a confession was obtained by exploitation of an illegal arrest, the Court in *Brown* also considered whether the police gave *Miranda* warnings to be "an important factor." 422 U.S. at 603. "Although *Brown* dealt with the exclusion of a defendant's statements, [the reasoning in *Brown*] applies equally to contraband revealed by [a] consent search."  *Kempton*, 166 Ariz. at 398, 803 P.2d at 119 (citing *Taheri*, 648 F.2d at 601).

constitutes a major break in the causal chain. *See, e.g.,* *United States v. Furrow,* 229 F.3d 805, 814 (9th Cir. 2000) ("Lack of knowledge of a prior search is an intervening factor which dissipates the coercion inherent in a request for consent made after an unconstitutional search."), *rev'd on other grounds by United States v. Johnson,* 256 F.3d 895 (9th Cir. 2001); *United States v. Carson*, 793 F.2d 1141, 1155 (10th Cir. 1986) (holding that a defendant waived his Fourth Amendment rights when he consented to search without knowledge of prior illegal police search); *cf. Moran v. Burbine*, 475 U.S. 412, 422 (1986) ("Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right.").

¶18     It is uncontested that Mrs. Guillen was unaware of the dog sniff when she consented to the search.[3]   Because Mrs. Guillen knew nothing of the dog sniff, no link between the alleged illegality and the consent was established. *Furrow*, 229 F.3d at 814.   Thus, she was "in the same posture . . . as a person not previously subject to an illegal entry." *Id*.

---

[3]     At the suppression hearing, the State offered to admit a recording of the conversation between the officers and Mrs. Guillen.  Defense counsel said that the court need not listen to the recording because he was not challenging the voluntariness of her consent.

10

¶19      Regarding *Brown*'s final factor, flagrancy of the alleged violation, nothing suggests that the officers knowingly violated Guillen's rights by conducting the first dog sniff from outside his garage.  First, none of the traditional markers of privacy appeared:  no wall or fence obstructed entry onto Guillen's property, and no signs alerted the officers that such entry was prohibited.  The front entrance and garage were publicly accessible.  *See United States v. Velazco-Durazo*, 372 F. Supp. 2d 520, 524-25 (D. Ariz. 2005) (holding that generally "there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of privacy, . . . to walk up the steps and knock on the front door of [a residence to ask] questions of the occupant thereof") (quoting *Davis v. United States*, 327 F.2d 301, 303 (9th Cir. 1964)); *Baker v. Clover,* 177 Ariz. 37, 39, 864 P.2d 1069, 1071 (App. 1993) (concluding that walkways and driveways leading to the home are "only semi-private" and recognizing a "reasonable expectation that various members of society may use the walkway in the course of attending to personal or business pursuits with persons residing in the home, including police officers on police business") (quoting *State v. Cloutier,* 544 A.2d 1277, 1279-80 (Me. 1988)); *State v. Lopez,* 115 Ariz. 40, 42, 563 P.2d 295, 297 (App. 1977) (holding that an officer may approach carport located in unfenced rear yard); *see also Florida v.*

11

*Royer,* 460 U.S. 491, 497 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.").

¶20 Second, the case law on dog sniffs of the exterior of a residence accessible to the public is far from clear. Dog sniffs of cars and luggage or other containers in public places plainly do not constitute searches under the Fourth Amendment. *See Caballes*, 543 U.S. at 408-09 (holding that a canine sniff performed on the exterior of a lawfully detained car "compromises no legitimate privacy interest") (quoting *United States v. Jacobsen*, 466 U.S. 109, 123 (1984)); *State v. Morrow,* 128 Ariz. 309, 312-13, 625 P.2d 898, 901-02 (1981) (holding that a dog sniff of luggage in a public place is not a search); *State v. Martinez,* 26 Ariz. App. 210, 212, 547 P.2d 62, 64 (1976), *aff'd and adopted*, 113 Ariz. 345, 554 P.2d 1272 (1976) (holding that use of narcotics dog by police officers, who lawfully stopped defendants' vehicle to investigate possible presence of marijuana, did not constitute a search).

¶21 Notwithstanding these cases, neither this Court nor the United States Supreme Court has analyzed the

constitutionality of dog sniffs conducted at the exterior of a residence under the Fourth Amendment or the Arizona Constitution. Moreover, cases from other jurisdictions are split on whether dog sniffs of the exterior of a residence violate the Fourth Amendment or their respective state constitutions. *Compare Hoop v. State,* 909 N.E.2d 463, 470 (Ind. Ct. App. 2009) (holding that a dog sniff of a private residence requires reasonable suspicion to prevent arbitrary searches), *and State v. Dearman,* 962 P.2d 850, 853 (Wash. Ct. App. 1998) (concluding that a dog sniff "expose[d] information that could not have been obtained without the [use of the dog]" and therefore use of a trained narcotics dog at a residence constituted a search under the state constitution) (citation omitted), *with Stabler v. State,* 990 So. 2d 1258, 1263 (Fla. Dist. Ct. App. 2008) (holding dog sniff at front door of apartment violated no legitimate expectation of privacy, and therefore, was not a search), *and People v. Jones*, 755 N.W.2d 224, 229 (Mich. Ct. App. 2008) (holding that defendant had no reasonable expectation of privacy at entrance of property that is open to the public, and "[a]ny contraband sniffed by the canine while on defendant's front porch . . . fell within the 'canine sniff' rule"). Given these circumstances, we conclude that any supposed "flagrancy of the official misconduct [was] *de minimis*." *State v. Blackmore*, 186 Ariz. 630, 635, 925 P.2d

1347, 1352 (1996); *see also Reffitt,* 145 Ariz. at 460, 702 P.2d at 689 (even if police actions in illegally arresting defendant were "erroneous and regrettable," they "did not involve flagrant or purposeful misconduct" so as to taint subsequent confession).

**D**

¶22     Mrs. Guillen's consent was sufficiently attenuated from any alleged prior illegality. Accordingly, the court of appeals erred in ordering a remand for the trial court to determine whether the officers' request for her consent was based in part on the positive dog sniff. *Guillen*, 222 Ariz. at ___ ¶ 32, 213 P.3d at 240. Such a determination would be irrelevant to the question of whether Mrs. Guillen voluntarily consented. *See, e.g.*, *Furrow*, 229 F.3d at 814; *see also United States v. Liss*, 103 F.3d 617, 621 (7th Cir. 1997) (stating that "an officer's motivation . . . is irrelevant. . . . The fact that an officer had actual suspicion, however obtained, cannot render invalid a consent for which the officer did not need any suspicion at all to request") (citation omitted). Therefore, the trial court did not err in ruling that the evidence seized from the garage should not be suppressed.

**IV**

¶23     For the foregoing reasons, we vacate the opinion of the court of appeals and affirm Guillen's conviction.

14

_____
                    Michael D. Ryan, Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
W. Scott Bales, Justice


_____
A. John Pelander, Justice

15