NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellant*,

*v.*

JACKIE RAY MANUEL, JR., *Appellee*.

No. 1 CA-CR 23-0099
FILED 10-31-2023

---

Appeal from the Superior Court in Yavapai County
No. P1300CR202100494
The Honorable Debra R. Phelan, Judge

**AFFIRMED**

---

COUNSEL

DM Cantor, Phoenix
By Courtney R. Sullivan
*Counsel for Appellee*

Yavapai County Attorney's Office, Prescott
By Amy C. Drew
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Chief Judge David B. Gass joined.

---

**J A C O B S**, Judge:

¶1        The State appeals the superior court's order granting Jackie Ray Manuel, Jr.'s motion to suppress evidence seized after an unlawfully extended traffic stop. Because the State has shown no error, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Deputy Camacho served as a K-9 officer in the Criminal Interdiction Unit within the Yavapai County Sheriff's Office, which is specifically tasked with stopping the flow of contraband across Arizona's interstate highways. Deputy Camacho understood his role in the Criminal Interdiction Unit was not to enforce traffic laws but instead to "catch smugglers." In the course of his duties, Deputy Camacho stopped Manuel for a traffic violation, conducted a warrantless search of his rental vehicle, and located cannabis-infused edibles and methamphetamine.

¶3        The State charged Manuel with one count each of sale or transportation of dangerous drugs, a class 2 felony, sale or transportation of narcotic drugs, a class 2 felony, and possession of drug paraphernalia, a class 6 felony. Before trial, Manuel moved to dismiss the charges as based on an unlawfully extended traffic stop, which the superior court treated as a motion to suppress evidence. Manuel argued Deputy Camacho lacked reasonable suspicion to extend the stop and that all evidence seized from the vehicle should be suppressed. The State opposed the motion and argued, as it does before us, that Deputy Camacho had reasonable suspicion of criminal activity, did not unlawfully extend the stop, and secured Manuel's consent to the search.

¶4        On the morning of April 13, 2021, Deputy Camacho observed Manuel driving too closely behind another vehicle on Interstate 40. He observed no other traffic violations. Deputy Camacho approached the passenger side window of Manuel's vehicle and explained the reason for the traffic stop. He told Manuel he would be giving him a warning. Manuel handed Deputy Camacho his driver's license and rental agreement, then

added "that he was going to be shipped out" for military training in a few weeks and pointed to a military-style bag in the backseat. Deputy Camacho claimed he suspected Manuel's "unsolicited" reference to his military service and travel plans to be a "cover story." He did not observe anything suspicious about Manuel's demeanor, paperwork, or vehicle.

¶5        Deputy Camacho repeated that he would issue a warning to Manuel, directed him to get out of his vehicle, and had him sit in the passenger seat of the patrol vehicle. Despite that, Deputy Camacho agreed he could have safely conducted the traffic stop from Manuel's passenger side window. Once in the patrol vehicle, the deputy said a third time he would be giving Manuel a warning. While running "checks" on Manuel's paperwork, Deputy Camacho asked him questions aimed at learning more about what he viewed as his "cover story." During this interaction, the deputy had his K-9 in the backseat of the patrol vehicle.

¶6        Manuel answered Deputy Camacho's questions about the training and travel plans, explaining he traveled from Mississippi to California to visit family before shipping out for his service. Under the pretense of checking Manuel's paperwork, the deputy searched the route from Mississippi to California and questioned Manuel's motivation for traveling that distance. Deputy Camacho explained his role in catching "smugglers" and asked if Manuel was traveling with any contraband. Manuel said no to all drugs, except when the deputy "got to marijuana he said, do edibles count as marijuana." Deputy Camacho said it depended on the amount of edibles Manuel possessed, continued to ask for specifics about the edibles, and explained how criminal arrests and charges work in Arizona. Manuel eventually admitted to having a large quantity of edibles and consented to a search of his vehicle.

¶7        After Deputy Camacho testified, the superior court took a recess to watch his body-worn camera footage from the traffic stop. In that footage, the deputy told Manuel he would be receiving a warning. Deputy Camacho ordered Manuel to move to the patrol vehicle. Manuel was calm and respectful throughout this interaction. When the K-9 began barking from the backseat, Deputy Camacho joked that he hoped Manuel was not afraid of dogs. The deputy asked a number of questions about Manuel's travel plans, military service, and the rental vehicle. Manuel responded politely to these questions, consistently answering "yes sir" or "no sir." Over 10 minutes into the stop, Deputy Camacho explained his role as a criminal interdiction officer and asked whether Manuel was traveling with any contraband. When Manuel eventually admitted to having edibles in

the vehicle, additional deputies can be seen arriving. Appearing reluctant, Manuel consented to a search of his vehicle.

¶8            In a detailed ruling, the superior court granted the motion to suppress all evidence seized during the traffic stop. The court found that, although there was a lawful basis to conduct the stop, Deputy Camacho did not (1) have a reasonable basis to direct Manuel to sit in the patrol vehicle and speak with him "in an attempt to find holes in [his] story or inconsistencies in statements," (2) need to have him in the patrol vehicle to effectuate the stop, and (3) develop arguably reasonable suspicion to investigate him for criminal activity until after directing him to sit in the patrol vehicle and engaging in that unjustified conversation.

¶9            The superior court found that, based on the evidence presented, Deputy Camacho directed Manuel to sit in the patrol vehicle to investigate him "under the guise of writing a citation." The court heard Deputy Camacho's testimony and evaluated his credibility, viewing it "with much skepticism," and found it "difficult to believe" that this particular deputy forces "every single driver of every demographic" to exit their vehicle and speak to them for 10 to 15 minutes while he processes their citations. Based on the court's assessment of the deputy's credibility, the court found it more likely "that there was something specific about" Manuel, a black man, that resulted in his conduct. The court did not accept that Manuel volunteering information regarding his military service, the sole reason for Deputy Camacho's concerns, gave him reasonable suspicion to extend the traffic stop. The court noted that there could be many reasons for a driver to volunteer information or "paint themselves in a more positive light," including trying to avoid a citation.

¶10           The superior court considered the body-worn camera footage in determining the "length and scope of the stop," finding that the conversation in the patrol vehicle lasted about 10 minutes with the K-9 breathing and barking in the background. By the end of the conversation, when Manuel "gave hesitant consent" to search his vehicle, the court noted that a "multitude" of other deputies had arrived on scene. Thus, the court concluded that Deputy Camacho acted in a way that "was more intrusive than necessary to effectuate an investigative detention," and suppressed all evidence seized as a result of the search.

¶11           On the State's motion, the superior court dismissed the case without prejudice, and the State timely appealed. We have jurisdiction under Article 6, Section 9 of the Arizona Constitution and A.R.S. § 13-4032(6).

**DISCUSSION**

¶12        The State challenges the superior court's suppression order, arguing Deputy Camacho had reasonable suspicion to believe Manuel was engaging in criminal activity, did not unlawfully extend the traffic stop, and conducted a consensual search of the vehicle.  We review the court's ruling on a motion to suppress for a clear abuse of discretion, *State v. Atwood*, 171 Ariz. 576, 603 (1992), considering only the evidence presented at the suppression hearing and viewing it in the light most favorable to sustaining the court's ruling.  *State v. Manuel*, 229 Ariz. 1, 4, ¶ 11 (2011).  We defer to the court's factual findings, including its assessment of the officer's "credibility and the reasonableness of inferences that he drew."  *State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118 (1996).  We review the court's ultimate legal conclusions *de novo*.  *Id*.

¶13        A traffic stop cannot last "longer than necessary to effectuate the purpose of the stop."  *Florida v. Royer*, 460 U.S. 491, 500 (1983).  An officer's authority to conduct a stop "ends when tasks tied to the traffic infraction are — or reasonably should have been — completed."  *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).  Such tasks include checking the driver's license, registration, and proof of insurance, as well as the time required for officers to "attend to related safety concerns."  *Id*. at 354–55.  "An officer's inquiries into matters unrelated to the justification for the traffic stop . . .  do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."  *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).  Once the purpose of the stop is fulfilled, the officer cannot continue to hold the driver "unless (1) the encounter between the driver and the officer becomes consensual, or (2) during the encounter, the officer develops a reasonable and articulable suspicion that criminal activity is afoot."  *State v. Sweeney*, 224 Ariz. 107, 112, ¶ 17 (App. 2010).  The officer, however, must not use pretextual "safety precautions" designed to facilitate an investigation into other crimes absent sufficient reasonable suspicion to do so.  *Rodriguez*, 575 U.S. at 355–57.

¶14        Although a lower standard than probable cause, reasonable suspicion still requires "something more than an 'inchoate and unparticularized suspicion or 'hunch.' "  *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).  The officer must "articulate some minimal, objective justification for an investigatory detention."  *State v. Teagle*, 217 Ariz. 17, 23, ¶ 25 (App. 2007).  To determine whether the officer had reasonable suspicion to extend a traffic stop, the superior court must look at all relevant factors, each of which could have a

potentially innocent explanation, and examine them collectively. *Id.* at 24, ¶ 25. "But circumstances or factors that do not reliably distinguish between suspect and innocent behaviors are insufficient to establish reasonable suspicion because they may cast too wide a net and subject all travelers to 'virtually random seizures.'" *Sweeney*, 224 Ariz. at 113, ¶ 22 (quoting *Reid v. Georgia*, 448 U.S. 438, 441 (1980)).

¶15 The State bore the burden of proving by a preponderance of the evidence that Deputy Camacho lawfully seized evidence in the warrantless search of Manuel's vehicle. *See* Ariz. R. Crim. P. 16.2(b)(1); *Rodriguez v. Arellano*, 194 Ariz. 211, 215, ¶ 12 (App. 1999). The State failed to meet that burden, and for three reasons, has failed to show error on appeal.

¶16 First, we find no error in the superior court's findings of fact. The court reviewed Deputy Camacho's body-worn camera footage at the suppression hearing. As the footage shows, Deputy Camacho said he would be issuing a warning, directed Manuel to get into the patrol vehicle, and engaged in conversation unrelated to the traffic violation. That conversation lasted over 10 minutes. Throughout this interaction, Manuel appeared calm, treated Deputy Camacho with respect, and answered questions appropriately. *See Sweeney*, 224 Ariz. at 113, ¶ 23 (considering demeanor in determining reasonable suspicion, including signs of nervousness and ability to answer questions). As noted by the court, Deputy Camacho's K-9 could be heard barking and breathing in the backseat of the patrol vehicle.

¶17 The superior court compared the footage with Deputy Camacho's testimony, finding that he lacked any justification for moving Manuel to the patrol vehicle. The court viewed Deputy Camacho's testimony that he treated all drivers similarly "with much skepticism," finding it more likely that "there was something specific" about Manuel fueling his motivations. Here, the court reasoned that Deputy Camacho had, to some degree, profiled Manuel and used pretextual tactics designed to facilitate his investigation into other crimes. *See Rodriguez*, 575 U.S. at 356–57. When we defer to the superior court's assessment of Deputy Camacho's credibility, as we must, we find ample support in the record for the court's factual findings. *See Gonzalez-Gutierrez*, 187 Ariz. at 118.

¶18 Second, we find no error in the superior court's legal conclusions. As the court concluded, Deputy Camacho did not need to order Manuel out of his vehicle and make him sit in the patrol car to safely effectuate the traffic stop. *See Rodriguez*, 575 U.S. at 354. Before doing so,

Deputy Camacho's only reason for suspecting Manuel of criminal activity was that he volunteered information regarding his military service. The deputy conceded that he did not have any safety concerns, did not observe weapons or contraband in the vehicle, and did not observe anything suspicious about Manuel's demeanor. Deputy Camacho could have completed the stop without ordering Manuel into the patrol vehicle and engaging in a conversation designed to ferret out criminal activity. Such steps exceeded what was reasonably required to issue a warning, and Deputy Camacho needed reasonable suspicion to extend the stop beyond its original purpose. *See Johnson*, 555 U.S. at 333.

¶19     Accordingly, the superior court acted within its discretion when it found Deputy Camacho's self-serving assertion that Manuel gave him a "cover story" did not amount to reasonable suspicion. There could have been an innocent explanation for Manuel's "unsolicited" statements to Deputy Camacho. *See Teagle*, 217 Ariz. at 24, ¶ 25. The court soundly reasoned that many drivers may be motivated to "paint themselves in a more positive light" to avoid a citation. Because Manuel's behavior could be typical of "a very large category of presumably innocent travelers," it could not, on its own, establish reasonable suspicion. *Id.* (citation and internal quotation marks omitted). The sole factor relied upon by Deputy Camacho in extending the traffic stop "did not give rise to objective reasonable suspicion of anything" and a "reasonably prudent person's suspicions would not be raised." *Sweeney*, 224 Ariz. at 113, ¶ 24. The court did not err in finding Deputy Camacho lacked the reasonable suspicion he needed to extend the stop.

¶20     Third, the State's contention that the traffic stop evolved into a valid consensual search is likewise unavailing. "Evidence seized following consent to a search must be suppressed if the consent is tainted by a prior constitutional violation." *State v. Guillen*, 223 Ariz. 314, 317, ¶ 13 (2010). "In other words, the unconstitutional acts of an officer taint a consensual search unless there are sufficient intervening circumstances between the unlawful conduct and the consent to truly show that it was voluntary." *State v. Kempton*, 166 Ariz. 392, 398 (App. 1990). Deputy Camacho took Manuel's paperwork, directed him to sit in the patrol vehicle, and subjected him to questions unrelated to the stop. All the while, Deputy Camacho's K-9 could be heard from the backseat, prompting an uncomfortable joke about whether Manuel feared dogs, and other deputies arrived on scene. Within this factual context, Deputy Camacho obtained Manuel's "hesitant consent" to search the vehicle. The superior court did not err when it found Deputy Camacho's unlawful extension of the stop

tainted, and therefore invalidated, Manuel's consent. *See Guillen*, 223 Ariz. at 317, ¶ 13.

## CONCLUSION

**¶21** Because the superior court did not err in suppressing the evidence seized during the search of the vehicle, we affirm the superior court's suppression order.



AMY M. WOOD • Clerk of the Court
FILED:   AA