NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JAIME GUILLERMO SANDOVAL BELTRAN, *Appellant.*

No. 1 CA-CR 23-0142
FILED 5-2-2024

Appeal from the Superior Court in Maricopa County
No. CR2022-114440-001
The Honorable David J. Palmer, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Damon A. Rossi
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Michael S. Catlett joined.

_____

**M O R S E**, Judge:

¶1        Jaime Sandoval Beltran ("Sandoval") appeals his convictions and sentences for armed robbery and aggravated assault.  He challenges the superior court's denial of his motion to suppress statements he made to a police officer before receiving a _Miranda_[1] warning and having a firearm seized from a vehicle.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Because the denial of Sandoval's suppression motion is the sole basis of appeal, we recite the facts based on the evidence presented on that motion and view that evidence in the light most favorable to sustaining the superior court's ruling.  _State v. Goudeau_, 239 Ariz. 421, 439, ¶ 26 (2016).

¶3        On April 21, 2022, Phoenix police officers stopped Sandoval on an unrelated matter.  Before Sandoval left, an officer learned that there was probable cause to arrest Sandoval on suspicion of armed robbery and aggravated assault.  The officers then re-approached Sandoval and asked him several questions related to the car Sandoval was in.  Sandoval told the officers he was waiting for a ride and that his brother-in-law, who owned the car, would be there soon to retrieve the vehicle.

¶4        An officer then told Sandoval that they were "going to have to take you in real quick."  While one officer handcuffed Sandoval, another removed a holstered handgun from Sandoval's hip.  An officer then asked Sandoval, "do you know what this is about?"  Sandoval replied that he did not.  Officers moved Sandoval near a police cruiser, and informed him that detectives wanted to speak to him about "some ongoing case that's why I was asking if you knew what this was about."  The officers then searched Sandoval's pockets and asked if "there [were] any other weapons or anything in the vehicle?"  Sandoval replied that his "AK" remained in the car.

_____

[1]        _Miranda v. Arizona_, 384 U.S. 436 (1966).

¶5        Officers then placed Sandoval in the police cruiser and allowed him to make two calls, one to his brother-in-law to arrange the retrieval of the car and the other to a family member about where Sandoval was being taken. Later, an officer informed Sandoval that police would not let anyone move the vehicle "because of this pending case." Sandoval asked why his brother-in-law could not retrieve the vehicle, and the officer responded by again asking Sandoval if he had anything in the vehicle. When Sandoval replied, "just my gun," the officer said "that's the issue, we don't want to leave a firearm out here." Sandoval said "I know, but my gun . . . it's mine. It's under my name." The officer responded by asking if Sandoval wanted the officer "to bring it with you?" Sandoval said that police were "not gonna release me with my gun walking," and the officer offered another alternative: "I can impound it for you. That's what I'm saying, so we have a weapon that's in the vehicle . . . which we're not going to leave, especially a rifle." When Sandoval asked why his brother-in-law could not take the gun, the officer responded that it was "evidence" in the case that the detectives wanted to talk to him about and officers could not release the evidence to "somebody else."

¶6        At that point, Sandoval said "You can just bring the gun with me. It's my gun, you can bring it with me. You can bring both the guns. They're my guns." The officer then grabbed a consent form and presented it to Sandoval. Sandoval carefully read the form and asked officers if the form would allow a complete search of the car or only allow officers to retrieve the gun. After some back and forth, the officer told Sandoval that they only intended to retrieve the gun: "I'm just basically getting in writing that it's at your request that I go into the vehicle to retrieve the weapon." Sandoval signed the form. After Sandoval told police where the gun was in the car, police retrieved and impounded the firearm.

¶7        The State indicted Sandoval on four counts, one count of armed robbery ("count one"), one count of aggravated assault ("count two"), and two counts of misconduct involving weapons ("count three" and "count four" respectively). Counts three and four were later severed. In January 2023, Sandoval filed a "Motion to Suppress Evidence Obtained Through Invalid Consent Search and Motion to Suppress Statements for Violation of Miranda" ("Motion"). In the Motion, Sandoval argued that while he was in custody, and before he was advised of his *Miranda* rights, officers asked questions designed to elicit an incriminating response:

> Contrary to [the officer's] statements in his pretrial interview, he did ask [Sandoval] questions likely to elicit and [sic] incriminating response. Specifically, [the officer] asked, "do

you know what this is about," and "is there any other weapons inside the vehicle?" Lastly, [the officer] asked [Sandoval] for consent to search the Cadillac. Because [the officer] failed to give *Miranda* warnings to [Sandoval], the consent to search was not valid.

**¶8** Sandoval asked the superior court to suppress the gun recovered from the car and Sandoval's "statement that his AK is in the vehicle . . . ." On January 23, 2023, the parties presented oral argument on the issue. The next day, the court found that "the Defendant's *Miranda* rights were not violated" and denied the Motion. After a two-day jury trial, the jury convicted Sandoval on counts one and two. Shortly after, he pled guilty to counts three and four. The court sentenced Sandoval to concurrent prison terms of 10.5 years for count one, 7.5 years for count two, 4.5 years for count three, and 4.5 years for count four. We have jurisdiction over Sandoval's timely appeal pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1), (A)(4).

## DISCUSSION

### I.   Motion to Suppress.

**¶9** On appeal, Sandoval argues that the court erred by denying the Motion because officers violated *Miranda* by asking questions after detaining Sandoval, rendering his consent to search the car and retrieve the firearm involuntary. We review the trial court's denial of a motion to suppress evidence for abuse of discretion. *Brown v. McClennen*, 239 Ariz. 521, 524, ¶ 10 (2016). We defer to the trial court's factual findings but review the court's legal and constitutional conclusions de novo. *See State v. Moody*, 208 Ariz. 424, 445, ¶ 62 (2004). We consider only the evidence presented at the suppression hearing and view the facts in a light most favorable to sustaining the trial court's ruling. *State v. Maciel*, 240 Ariz. 46, 49, ¶ 9 (2016).

### A.   *Miranda* Warning.

**¶10** Citing *State v. Sweeney*, 224 Ariz. 107, 111, ¶ 12 (App. 2010), Sandoval asks us to conduct our own "independent review" of the body cam footage because the court made clearly erroneous factual determinations. Although *Sweeney* suggests we conduct an "independent review" of the video evidence, it does not specify what an "independent review" entails. *Id*. Our supreme court has since reiterated that we must give deference to the superior court's factual findings, if they are "reasonably supported by the evidence." *State v. Adair*, 241 Ariz. 58, 60, ¶ 9

4

(2016).[2] Stated differently, to be consistent with both lines of precedent, we conduct an independent review of the video evidence, *Sweeney*, 224 Ariz. at 111, ¶ 12, but we review that evidence "in the light most favorable to sustaining the trial court's ruling," *Maciel*, 240 Ariz. at 49, ¶ 9. Our independent review of the video evidence supports the trial court's ruling. Sandoval suggests that the court's findings are inaccurate because they do not include every event that happened during the encounter nor recount the sequence in which some of the events occurred. But the court did not state that any of the challenged findings occurred in a specific sequence and none of the matters identified by Sandoval challenge the accuracy of the court's findings. Viewed in that light, the video confirms the accuracy of the court's findings on all material facts.

¶11            For example, Sandoval argues that the court erred in finding that "the Defendant, who was still in the drivers' seat of the vehicle he stopped in originally, was recontacted by the Officers and told of the new charges." But the video footage confirms that description—officers recontacted Sandoval while he was still in the driver's seat of the car, and officers later told him "You're just being detained right now because I guess there is some ongoing case that . . . a detective wants to talk to you about . . . ."

¶12            Similarly, Sandoval claims the court erred in finding that Sandoval "next told police his brother-in-law was in route to their location." But the court did not use the phrase "next." Instead, the court found that Sandoval "informed the officers that his brother-in-law was in route [to] that location to take possession of the car, which belonged to him." And Sandoval acknowledges that he had previously told officers he called his brother-in-law to come get the car.

¶13            Finally, Sandoval asserts that the court's finding that an officer "then" asked Sandoval "about weapons in the car is also clearly erroneous." Again, the court did not use the word "then" or otherwise

---

2       *See also State v. Aguirre*, 2 CA-CR 2022-0032, 2022 WL 1210240, at *3, ¶ 10 n.1 (Ariz. App. Apr. 25, 2022) (mem. decision) (noting that *Sweeney* "did not rely on that [independent] review to disturb the trial court's credibility determination and *Sweeney* cited no authority suggesting that it would be appropriate to do so" (citation omitted)); *State v. Malloy*, 1 CA-CR 19-0295, 2021 WL 2206507, at *6, ¶ 26 (Ariz. App. June 1, 2021) (mem. decision) (Williams, J., dissenting) ("In other words, nothing about *Sweeney* addressed, or changed, our review of video evidence from deferential to de novo.").

suggest an immediacy to the timing of events. Instead, the court found that officers "took [Sandoval] into custody, and during that process a handgun in his possession was seized by the officers. Officers asked the Defendant if there were any weapons in the car, to which he stated his 'AK' was in the car." That is exactly what is shown in the video—officers almost simultaneously handcuffed Sandoval and removed a gun from his hip, then moved him to the police car and searched his pockets, and then they asked him if there were other guns in the car. There is no error in the court's findings.

¶14       Next, Sandoval contends that the officers asking, "do you know what this is about" ("Question 1") and if there were "any more weapons or anything" in the vehicle ("Question 2") were part of a custodial interrogation and should have been suppressed because police did not inform Sandoval of his *Miranda* rights.

¶15       "The Fifth Amendment to the U.S. Constitution shields all persons from compulsory self-incrimination." *Maciel*, 240 Ariz. at 49, ¶ 10. To protect this right, police officers must administer *Miranda* warnings before conducting a custodial interrogation of a suspect. *Miranda*, 384 U.S. at 444. "*Miranda* custody requires not only curtailment of an individual's freedom of action, but also an environment that 'presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*.'" *Maciel*, 240 Ariz. at 49, ¶ 12 (quoting *Howes v. Fields*, 565 U.S. 499, 509 (2012)).

¶16       Because the State did not reference the statement elicited from Question 1 at trial, we need not decide whether the line of questioning violated *Miranda*. *See State v. Hoskins*, 199 Ariz. 127, 136, ¶ 24 (2000) ("Even assuming a *Miranda* violation, non-reference to the statements at trial renders defendant's *Miranda* objections moot."); *see also State v. Starr*, 119 Ariz. 472, 476 (App. 1978) (noting that a defendant is not prejudiced when the State does not make reference at trial to improperly obtained statements in violation of *Miranda*).

¶17       As to Question 2, a response to questions that are necessary to ensure an officer's safety or the public's safety is admissible, even without a *Miranda* warning. *State v. Leteve*, 237 Ariz. 516, 522, ¶ 9 (2015) (citing *New York v. Quarles*, 467 U.S. 649, 659 (1984)). An "objectively reasonable need to protect the police or the public from any immediate danger" outweighs the privilege against self-incrimination. *Quarles*, 467 U.S. at 657, 659 n.8; *United States v. DeJear*, 552 F.3d 1196, 1202 (10th Cir. 2009) (finding exception

for a question regarding guns inside a vehicle while officers had firearms trained on the suspects).  As the United States Supreme Court stated:

> We decline to place officers . . . in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the *Miranda* warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them.

*Quarles*, 467 U.S. at 657–58.

**¶18**        This narrow exception, however, does not allow officers to ask "questions designed solely to elicit testimonial evidence from a suspect." *Id.* at 658–59.  Instead, there must be "an objectively reasonable need to protect the police or the public from any immediate danger." *State v. Ramirez*, 178 Ariz. 116, 124 (1994) (quoting *United States v. Brady*, 819 F.2d 884, 888 n.3 (9th Cir. 1987)); *see Allen v. Roe*, 305 F.3d 1046, 1051 (9th Cir. 2002) (noting that an officer's subjective intentions do not affect whether the public safety exception applies).  Sandoval's arrest presented such a situation.  Officers had already removed one firearm from Sandoval's person and Sandoval's brother-in-law was en route to retrieve the vehicle.  Asking if the vehicle contained another firearm fits squarely within the public-safety exception and was both reasonable and likely to afford safety to the police and the public. *See In re Roy L.*, 197 Ariz. 441, 446, ¶ 15 (App. 2000) (finding an exception for a question regarding firearm possession after arrest).  Accordingly, the court did not err in concluding that a *Miranda* violation did not occur.

### B.    Consent Form.

**¶19**        Next, Sandoval argues that the court abused its discretion "when it failed to address [Sandoval's] claim that the search and seizure violated his right to privacy."  However, the court implicitly found that Sandoval voluntarily consented to the search.  We agree that Sandoval's consent was voluntary.

**¶20**        Consent to search is a "long recognized exception to the warrant requirement." *State v. Guillen*, 223 Ariz. 314, 317, ¶ 11 (2010).  Consent must "not be coerced, by explicit or implicit means, by implied threat or covert force," and evaluating the voluntariness of consent is a

factual inquiry based on the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226–28 (1973). The State bears the burden of showing whether the consent to search was voluntary. *Guillen*, 223 Ariz. at 317, ¶ 11.

¶21 Nothing in the record suggests that Sandoval's consent to search was involuntary. Police gave Sandoval the option of leaving the gun in the vehicle or "impounding" it. When Sandoval again asked why his brother-in-law could not take the firearm, the officer explained that the detectives wanted to talk to him about an incident that "involves a weapon that's inside the vehicle . . . . So we need to sit by this vehicle so that we can retrieve the weapon from the vehicle in case it needs to be evidence in the case." Later, when Sandoval asked questions about the scope of the consent form, the officer explained that it was "the same form that we'd sign for a search of premises, or whatever . . . so we don't sit and wait for that search warrant. Like I said, it's optional for you to do this."

¶22 Sandoval contends that this amounted to police "threaten[ing] a search warrant" if he did not cooperate, rendering his consent to search involuntary. Our review of the record reveals no such ultimatum. Police gave Sandoval a choice of impounding the weapon and allowing his brother-in-law to take the car immediately or keeping the gun and the vehicle in place. Police never stated they would obtain a search warrant if Sandoval did not consent to the search. And implicit in the officer's statements that they were "not taking [Sandoval] down to jail" but instead just to "talk to detectives" and police only needed "to sit by this vehicle . . . in case [the weapon] needs to be evidence in the current case" was the potential that Sandoval could be released after speaking with detectives and retrieve the car and firearm himself. Ultimately, Sandoval chose to "bring both the guns" to allow his brother-in-law to take the car immediately.

¶23 But even if the officer implied that they would obtain a search warrant, such a statement does not necessarily make Sandoval's consent involuntary. *See State v. Atwood*, 171 Ariz. 576, 617 (1992) (noting that the threat of a search warrant would not "render [the] defendant's consent involuntary"); *United States v. Talkington*, 843 F.2d 1041, 1049 (7th Cir. 1988) (noting that when considered in the totality of the circumstances, a defendant's consent may be free and voluntary despite the threat to obtain a warrant if the defendant did not consent); *see also United States v. Compton*, 704 F.2d 739, 742 (5th Cir. 1983) (noting that a threat made by law enforcement to obtain a search warrant if the suspect did not cooperate did not invalidate written consent to search). Viewing the totality of the

circumstances, we agree that Sandoval voluntarily consented to allow officers to retrieve the gun from the car.

¶24        Sandoval contends several other factors, such as a lack of a *Miranda* warning, Sandoval's custody status when he gave his consent, that the officers wore handguns, and that they outnumbered Sandoval, weigh in his favor.   While these are relevant factors, Sandoval overlooks the extensive evidence that his consent was voluntary.  *See State v. Watson*, 114 Ariz. 1, 7 (1976) (noting that no one factor is dispositive in the totality of circumstances analysis of voluntariness of consent).   For example, while police were armed, they never drew their guns, they informed Sandoval that signing the form was "optional," and they allowed Sandoval to make several phone calls.  *See id.*  (noting the voluntariness of consent to a search includes whether the police displayed guns); *Schneckloth*, 412 U.S. at 227 (stating that "knowledge of the right to refuse consent is one factor to be taken into account"); *State v. Laughter*, 128 Ariz. 264, 266–67 (App. 1980) (finding that a lack of threatening words or actions and the defendant being "cooperative in all matters" weighed in favor of finding voluntary consent). Most notably, Sandoval carefully read the consent form, asked officers if the form would allow police to search the entire vehicle or just retrieve the firearm, and did not sign until police assured him that they would only retrieve the firearm.  This demonstrated Sandoval understood that he did not have to sign the form and his consent was voluntary.  *See Atwood*, 171 Ariz. at 617 (noting the defendant's sophistication is a factor in whether a defendant voluntarily consented to a search).  The court did not abuse its discretion in denying the Motion.[3]

## CONCLUSION

¶25        We affirm the court's denial of Sandoval's motion to suppress and the resulting convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:   AA

---

[3]        The State contends that even if police violated *Miranda*, any resulting evidence introduced at trial was harmless.  Because we find no error in the court's denial of the Motion, we do not reach the State's harmless-error arguments.